CARDI, Appellant,

v.

GUMP et al., Appellees.

[Cite as *Cardi v. Gump* (1997), 121 Ohio App.3d 16.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71278.

Decided June 5, 1997.

*David J. Finnerty*, for appellant.

*David J. Murray*, for appellee Alice M. Gump.

*Patrick S. Corrigan*, for appellee Don Pack.

JAMES D. SWEENEY, Chief Justice.

Plaintiff-appellant Joseph Cardi appeals from the trial court's ruling granting the motions for summary judgment filed by the defendant-appellee Alice Gump and third-party defendant-appellee Don Pack, d.b.a. A & P Septic Tank Cleaning Services. George Dorsi, Jr. and Realty One, Inc. were dismissed with prejudice and are not parties to this appeal.

The dispute between the parties arose subsequent to the sale of a home by appellee Gump, located at 24485 Barrett Road, Olmsted Township, to the appellant. The appellant alleges that the vendor fraudulently misrepresented defects in the basement which led to water leakage and water accumulation. Gump named appellee Pack as a third-party defendant based upon his installation of a new septic system. The appellant was granted leave to amend his complaint and set forth his own direct cause of action against appellee Pack.

The evidence shows that the appellant viewed the property for the first time on May 13, 1994. He visited the property three times before he submitted his offer to Gump and five to six times after the purchase agreement, but prior to the title transfer. Neither the appellant nor his home inspectors were prohibited or hindered in any way from viewing or inspecting the property.

On May 22, 1994, the appellant submitted a written offer to purchase the appellee's property. The residential property disclosure form, signed by Gump, indicated that the basement had no current water leakage, water accumulation, excess dampness or other defects with the basement or crawl space. On May 24, 1994, the offer was accepted.

On May 27, 1994, the home was inspected by Joseph Jagger of Jagger Enterprises Corporation, d.b.a. Buckeye Home Inspections. A second inspection by Robert Cline was performed on the home sometime between June 4, 1994 and June 6, 1994, to evaluate the structural sufficiency and foundation of the home. The new septic system was installed by appellee Pack between July 11, 1994 and July 15, 1994.

The appellant first noticed water in the basement on August 3, 1994, when he moved in. However, the first major flooding of the basement occurred on August 13, 1994. At some point thereafter, the appellant contacted Pack. As a result, Pack rerouted a footer drain and reinstalled the septic tank. At the time he performed this work, Pack indicated to the appellant that the basement had always had water in it. After the completion of this work, the appellant suffered no water leakage in his basement until May 29, 1995. In July 1995, the appellant hired master plumber Tony Grandinette to repair the foundation and waterproof the basement. Subsequent to these repairs, there has been no recurrence of water in the appellant's basement.

Prior to his purchase of the property, the appellant noticed efflorescence, approximately three to four inches high in some areas, on the basement walls. Not only did the appellant notice efflorescence on the basement walls, but both of the home inspectors noted the problem as well. Jagger inspected the home on May 27, 1994, and in his report he noted that the "negative slope enhances potential for water penetration through the foundation." By negative slope, Jagger meant that the earth is pitched or angled towards the foundation in such a manner that water would run towards the foundation. In this situation, water is trapped against the foundation and it could seep through the walls creating visible water penetration in the basement. Jagger noted the evidence of water damage in the basement and advised Cardi to check into it. To the best of his recollection, he advised Cardi to inquire of the owner for the source of the water marks in the basement. In his opinion, the water had come through the basement walls at one point. Jagger testified that in his report to Cardi, he suggested that Cardi pursue the issue of the draining system.

When questioned about the white marks on the basement walls, Jagger responded that they "appear to be mold, mildew, water staining and florescent [*sic*] which deposit mineral deposits from cementites, in other words, cement-based materials that are carried in solutions through foundation walls and deposited on an interior surface." In his experience, this indicates that the water came from behind the wall rather than building up from within the basement. He testified that an isolated incident of water from the sump pump not having been properly maintained would not cause such marks.

Robert Cline, a certified building inspector, testified at his deposition that he inspected the appellant's home for structural soundness; that he was asked to examine the basement walls, the vertical walls from the concrete floor to the first floor of the house; that this inspection was not for water tightness; that in his opinion the walls were structurally sound and not in need of repair; that the walls appeared younger than their forty years; that since there were water marks on the knotty pine panelling, the question became where did the water come from; he recalled observing areas which would have negative draining; that he spoke to Cardi regarding these areas; that when there is negative drainage the water will collect and the cinder block will absorb that water; and that he has no idea how the water marks occurred in the basement. Cline testified that he was at the property for twenty minutes on one occasion only.

When master plumber Tony Grandinette inspected the property he found that the footer drains were improperly installed at the time the house was built. He told the appellant that his drainage problems were caused by the following facts: (1) the drains were not backfilled with gravel and that ten feet of dirt was on top of the clay tiles, (2) the clay tiles were improperly installed, and (3) the down

spouts for the gutters were connected to the foundation drain tiles. Grandinette did not examine the septic system because in his opinion it was not the source of the problems.

In her deposition, Gump testified that water never came out of the walls, but that when the sump pump is not properly cleaned, water will back up into the basement. The area covered by water under these circumstances was at most twelve feet square, and the greatest depth reached by the water was two inches.

In Cuyahoga County the banks will not finance a purchase of a home unless there is an up-to-date septic system. In order that the appellant be able to obtain financing, a new septic system was installed. Gump specifically testified that there was no water leakage or water problems prior to the sale of the house. The first she learned of a water problem was after the appellant moved in and after the septic tank was replaced, when the appellant telephoned her. At the time the disclosure form was signed, all of the information was accurate and truthful to the best of her knowledge. To the best of her recollection, the conversation with Cardi regarding the sump pump and water in the basement occurred prior to the signing of the contract and prior to the appellant's two home inspections.

In his deposition, the appellant stated that he met with Gump on several occasions, but he could not recall if it was before or after the signing of the contract. He spoke with Gump specifically regarding the water in the basement on August 13, 1994, regarding the first major water problem after he moved in. Upon inquiry, the appellant relied on the representations of Gump, who stated that the basement never had water and that the marks were due to the sump pump's backing up.

The appellant testified at this deposition that all four of the basement walls seeped water. The water never accumulated to any depth on the floor; rather, the "water moved like a river from all four walls straight down the slope of the basement to the pit, the water pit where the [sump] pump was located."

In his affidavit attached to the brief in opposition to the motion for summary judgment, the appellant affirmed that prior to writing the offer to purchase the premises, he inquired of the vendor about the condition of the basement and whether the basement was subject to any water seepage; that Gump represented that there was no water seepage and the only water problem in the basement resulted from an overflow from the clothes washer when the sump pump in the corner drain became clogged; that he retained a professional home inspector, who observed that the knotty pine walls of the basement had been wet and that the tiles had been wet; that the appellant then inquired of Gump as to prior water seepage and was informed that there was not water seepage; that the appellant relied on Gump's representations and searched for other sources of the

basement water problem; that he contacted Don Pack; that Pack rerouted drain lines damaged during the installation of the septic system; that on or about May 29, 1995, the basement was flooded with significant amounts of water; that on or about June 12, 1995, Tony Grandinette excavated around the foundation and reported that the footer drain was improperly installed, that the drain tiles were too close together and without gravel fill, and that the down spouts were connected directly to the foundation drain tiles; and that these deficiencies were present from the time of the original construction.

The appellant sets forth one assignment of error:

"Summary judgment was not appropriate in this case since there still remains a genuine issue of material fact which can only be decided by a jury."

The appellant argues that Gump made fraudulent misrepresentations to him regarding the source of the basement water problems. Since the appellant's expert, Grandinette, believes that the difficulties occurred with the construction of the home, and Gump asserts that the problems arose from a clogged sump pump, there is a question of fact sufficient to overcome the motion for summary judgment. In the alternative, Cardi argues that the water problems were caused by the installation of the septic system and, therefore, the court improperly granted appellee Pack's motion for summary judgment.

Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, it appears from the evidence that reasonable minds can come but to one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, citing to *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, and *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. An appellate court reviews the lower court's determination on a motion for summary judgment *de novo*. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 641 N.E.2d 265.

The doctrine of caveat emptor governs real property sales transactions in Ohio and relieves a vendor of the obligation of revealing every imperfection that might exist in a residential property. *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642. Without such a doctrine, nearly every sale would be subject to litigation by disappointed buyers. The *Layman* court specified the circumstances under which caveat emptor precludes recovery in an action by a

purchaser for a structural defect in real estate: (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. *Id.* at syllabus, citing with approval *Traverse v. Long* (1956), 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256.

First, in the case *sub judice,* the appellant has characterized the water leakage into his basement as a "latent defect." Such is not the case. A latent defect is one which is not open to observation or discoverable upon reasonable inspection. Here, the efflorescence in the basement which was indicative of water was noted prior to the appellant's offer to purchase and prior to the transfer of title by the appellant and by his two home inspectors, Jagger and Cline. In addition to noting the efflorescence, each of the inspectors indicated to the appellant that the home may have a drainage problem. Second, the appellant has not contested that he inspected the property on numerous occasions and that there was no impediment to a complete and thorough inspection.

The appellant does, however, allege fraud against Gump. It is clear that the doctrine of caveat emptor cannot be used to protect a vendor if the buyer can prove fraud. *Layman, supra.* Likewise, courts have held that an "as is" clause cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent concealment. *Tipton v. Nuzum* (1992), 84 Ohio App.3d 33, 616 N.E.2d 265; *Kaye v. Buehrle* (1983), 8 Ohio App.3d 381, 8 OBR 495, 457 N.E.2d 373.

In order to prove fraudulent misrepresentation, a buyer must establish each of the following elements: (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Schlecht v. Helton* (Jan. 16, 1997), Cuyahoga App. No. 70582, unreported, 1997 WL 15259.

Construing, as we must for purposes of summary judgment, the evidence most strongly in favor of the appellant, the appellant has presented evidence that Gump knowingly misrepresented the extent of the water leakage in the basement. We nevertheless conclude that the fourth element of fraud is lacking, as a matter of law, because the appellant cannot show justifiable reliance upon the representations of Gump. As stated previously, the deposition testimony of both Cline and Jagger revealed that they had each indicated to the appellant that he should inquire into the drainage system as it related to the basement. Since the appellant was not justified in relying on the protestations of Gump that there was

no water leakage into the basement, the appellant has failed to present evidence to surmount summary judgment.

 Finally, turning to the appellant's claims against appellee Pack, the appellant has failed to present any evidence at all that the installation of the new septic system caused water damage to the basement. It is not sufficient, as a matter of law, to state that the basement did not leak before, it does now, and therefore the septic system installer must be responsible. Even the appellant's own expert testified that the problems in the basement were created at the time the home was constructed.

The appellant's assignment of error is overruled.

*Judgment affirmed.*

PATRICIA ANN BLACKMON and PATTON, JJ., concur.