JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, William P. Moreland ("Moreland") appeals the trial court's granting of summary judgment in favor of defendants-appellees, Jacqueline Ksiazek, individually and as executrix of the Estate of Genevieve Kozer ("Ksiazek"), Mary Jaworski ("Jaworski"), 2100 Realty, James Lentz ("Lentz"), William Davis ("Davis"), and ERA Lentz (collectively referred to as "appellees"). Finding no merit to the appeal, we affirm.
 {¶ 2} In January 2002, Moreland and his wife ("the Morelands"), solicited the services of Jaworski and 2100 Realty to assist them in purchasing a home. Moreland stated that he wanted a home that was approximately 1,500 square feet, with a garage, located close to his wife's work, and within a $125,000 price range. Based upon this criteria, Jaworski found a property located on South Hills Drive in Cleveland, which Ksiazek had listed with Lentz of ERA Lentz. The property was the home of Ksiazek's late mother, and Ksiazek was the executrix of her mother's estate.
 {¶ 3} During the Morelands' first visit to the property, they went through the entire house with Jaworski. A residential property disclosure form was provided to the Morelands that indicated that the owner was not occupying the property, the property was part of an estate, and that there was dampness in the basement. The Morelands were able to access the house with keys left in the lockbox. However, when they attempted to access the detached garage, a padlock prohibited their entrance, and no garage key could be found in the lockbox.
 {¶ 4} Moreland inquired as to whether there was a key for the garage. Jaworski contacted Lentz and inquired about the key to the garage. Lentz told her that the key was in the lockbox or that it was "there somewhere."
 {¶ 5} About a week later, the Morelands again visited the subject property with Jaworski. They gained access to the house by the keys left in the lockbox. However, they were unable to access the garage because no key could be found. Jaworski again contacted Lentz and left him a message regarding the missing garage key.
 {¶ 6} After the second visit, the Morelands, without viewing the interior of the garage, submitted an offer to purchase the subject property. The purchase agreement specified that the property was being sold "as-is" and provided, in pertinent part:
"The property, which PURCHASER accepts in its PRESENTCONDITION, shall include appurtenant rights, privileges andeasements, and all buildings and fixtures * * *
* * *
Condition of Property: Purchaser has examined the property andagrees that the property in its `as is' present physicalcondition, including any defects disclosed by the seller,purchaser has not relied upon any representations, warranties orstatements about the property (including but not limited to itscondition or use) unless otherwise disclosed by the seller(s)."
 {¶ 7} The Morelands indicated on the purchase agreement that they desired to have a general home inspection, which was a contingency to the agreement. Any other inspection contingencies not indicated constituted a waiver and the property was accepted by the Morelands in its "as is" condition. The Morelands signed this agreement on January 30, 2002.
 {¶ 8} However, Moreland decided to forego a professional home inspection. Jaworski stated in her deposition that she recommended a professional home inspection and offered to provide names of inspectors. Instead, Moreland and his father, brother-in-law, and his brother-in-law's father conducted the inspection. None of these individuals were professional inspectors.
 {¶ 9} At the time of the inspection, Moreland was unable to gain access to the garage because the padlock was still on the garage and no key could be located. Moreland stated they could see inside the garage, but visibility was limited because the windows were dirty. Moreland was able to inspect the exterior of the garage, which needed paint, but he did not go up on the roof to inspect it. It was also pointed out that there was dampness in the basement and the paint was peeling. Moreland stated he was satisfied with the inspection of the house.
 {¶ 10} After the inspection, Jaworski notified Lentz that the inspection was completed and the sale proceeded. When Lentz went to remove the lockbox and return the keys to the seller as requested, he found the garage key on the floor in front of the door. Lentz did not advise Jaworski of his locating the key because it had been six weeks since the purchase agreement was executed.
 {¶ 11} Prior to closing, Moreland's financial broker contacted Lentz to see if the seller would allow Moreland to store carpet in the garage. Lentz advised him that the seller did not want anyone to access the property until the title transferred. Jaworski advised Moreland that this was customary.
 {¶ 12} After the Morelands took possession of the property and Moreland entered the garage, he found that the garage needed to be replaced at an estimated cost of $10,900. Moreland also stated that the basement was not only damp, but it had "puddles crawling across the floor." He found it necessary to waterproof that portion of the basement.
 {¶ 13} After Moreland advised Jaworski of the problems with the basement and garage, Jaworski contacted Lentz. According to Jaworski, Lentz advised her that the seller did not feel responsible because it was an estate and the property was sold "as is." Jaworski advised Moreland that the matter could not be resolved between the parties, and thus Moreland filed the present action, claiming fraudulent misrepresentation, fraudulent concealment/fraudulent nondisclosure, breach of contract, and negligence.
 {¶ 14} The trial court granted appellees' motions for summary judgment. Moreland appeals, raising four assignments of error.
 {¶ 15} In his first assignment of error, Moreland broadly claims that the trial court erred in granting summary judgment as to all appellees because genuine issues of material fact remain. He has made no specific argument, however, in this assignment of error. Therefore, we will address the claims he raises in each corresponding assignment of error.
 {¶ 16} Appellate review of summary judgment is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389,696 N.E.2d 201, as follows:
"Pursuant to Civ.R. 56, summary judgment is appropriate when(1) there is no genuine issue of material fact, (2) the movingparty is entitled to judgment as a matter of law, and (3)reasonable minds can come to but one conclusion and thatconclusion is adverse to the nonmoving party, said party beingentitled to have the evidence construed most strongly in hisfavor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus.The party moving for summary judgment bears the burden of showingthat there is no genuine issue of material fact and that it isentitled to judgment as a matter of law. Dresher v. Burt,75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264."
 {¶ 17} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 Jaworski and 2100 Realty {¶ 18} In his second assignment of error, Moreland claims that the trial court erred in granting summary judgment in favor of Jaworski and 2100 Realty because material issues of fact existed regarding the duty owed to him.
 {¶ 19} When determining the presence or absence of negligent conduct, it is necessary to examine (1) the existence of a duty owing to the plaintiffs, (2) a breach of that duty, and (3) proximate causation. Bennison v. Stillpass Transit Co. (1966),5 Ohio St.2d 122.
 {¶ 20} A real estate agent has a fiduciary duty to its clients. See Parahoo v. Mancini (Apr. 14, 1998), Franklin App. No. 97APE08-1071, citing Foust v. Valleybrook Realty Co.
(1981), 4 Ohio App.3d 164.
"A `fiduciary relationship' is one in which special confidenceand trust is reposed in the integrity and fidelity of another andthere is a resulting position of superiority or influence,acquired by virtue of this special trust. Belvedere v.Condominium Unit Owners Assn. v. R.E. Roark Cos., Inc. (1993),67 Ohio St.3d 274, 282, citing In re Termination of Employmentof Pratt (1974), 40 Ohio St.2d 107, 115.
 {¶ 21} The statutory fiduciary duties owed by a real estate agent to
 {¶ 22} her client are set forth in R.C. 4735.62, which provides, in pertinent part:
"In representing any client in an agency or subagencyrelationship, the licensee shall be a fiduciary of the client andshall use the licensee's best efforts to further the interest ofthe client including, but not limited to, doing all of thefollowing:
 Exercising reasonable skill and care in representing theclient and carrying out the responsibilities of the agencyrelationship;
* * *
(C) Following any lawful instructions of the client;
 (D) Performing all duties specified in this chapter in amanner that is loyal to the interest of the client;
* * *
(F) Disclosing to the client any material facts of thetransaction of which the licensee is aware or should be aware inthe exercise of reasonable skill and care and that are notconfidential information pursuant to a current or prior agency ordual agency relationship;
 (G) Advising the client to obtain expert advice related tomaterial matters when necessary or appropriate;"
 {¶ 23} Moreland claims that Jaworksi and 2100 Realty breached their fiduciary duty by failing to exercise reasonable skill and care in representing him, failing to follow lawful instructions, and failing to perform their duties in a manner loyal to his interest.
 {¶ 24} In support of these contentions, Moreland attached to his brief in opposition to summary judgment an unsworn letter from his real estate expert, Gary Pescatrice, which sought to demonstrate a breach of duty by Jaworski. Pescatrice opined that Jaworski "may have breached her duty by not pursuing the inspection of the interior of the garage prior to closing."
 {¶ 25} This letter does not create an issue of fact because it is inadmissible for summary judgment. Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment. Those materials are affidavits, depositions, transcripts of hearings in the proceedings, written admissions, answers to interrogatories, written stipulations, and the pleadings, if timely filed. Civ.R. 56(C). Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit. Martin v. Cent. Ohio Transit Auth. (1990),70 Ohio App.3d 83, 89. Documents that have not been sworn, certified, or authenticated by way of affidavit "have no evidentiary value." Mitchell v. Ross (1984), 14 Ohio App.3d 75.
 {¶ 26} Here, the letter attached to Moreland's brief in opposition is not proper Civ.R. 56(C) evidence because it does not fall into one of the categories of evidentiary materials listed in that section nor was it incorporated and referenced in a properly framed affidavit pursuant to Civ.R. 56(E). Therefore, this letter has no evidentiary value.
 {¶ 27} Moreland also attempts to use the deposition of Lentz to establish that Jaworski breached her fiduciary duty. After reviewing the deposition in its entirety, Lentz does not affirmatively opine that Jaworksi breached her fiduciary duty. Instead, Lentz gave his opinion as to how he would have handled the situation about being unable to access the garage, stating:
"I can't — you know, again, I can't answer whether she'sbreached her duty or not. I mean, I wasn't there. I wasn't a partof her conversations with the Morelands. You know, it's reallyhard for me to say someone breached their duty."
 {¶ 28} Lentz's deposition testimony does not create an issue of material fact.
 {¶ 29} Moreland asserts that Jaworski breached her statutory and common law fiduciary duties by failing to gain access to the garage and by failing to explain how to include a contingency to the contract that mandated viewing the garage before title transfer.
 {¶ 30} It is uncontroverted that Jaworski unsuccessfully attempted to gain access to the garage by asking Lentz for the garage key at least twice. Moreland knew that she was unable to obtain the key. It is also uncontroverted that Jaworski had no actual knowledge about the condition of the garage. Nevertheless, Moreland purchased the home without ever viewing the interior of the garage.
 {¶ 31} While it is true that Jaworski did not suggest the use of a contingency for viewing the garage, Jaworski explained:
"I did not suggest it because of Paul's [Moreland] response tothe inspection and his comfort level as far as not seeing theinside of the garage."
 {¶ 32} She repeatedly stated that Moreland told her, "I know that I'm buying an older home and an older garage." Jaworski could not recall any concerns by Moreland about not having access to the garage or any concerns about the basement. She stated:
"Again, everything was relative to the age as far as theirconcerns, so they did not seem to be overly concerned, no."
 {¶ 33} Another reason why Jaworksi claims she did not recommend a contingency was because Moreland was satisfied with his own inspection of the property and he was willing to "sign off" on the general home inspection contingency. Moreland explained why he purchased the house without access to the garage, as follows:
"Because there was no red flag to tell me that there was aproblem except for a locked garage, which didn't really seem tobe a problem. It seemed to be a problem with the key, not thegarage."
 {¶ 34} We find that Moreland has presented insufficient evidence demonstrating genuine issues of material fact as to whether Jaworski and 2100 Realty breached their fiduciary duty. Instead, Jaworksi fulfilled her duty, by assisting Moreland in seeking out a home that fit his criteria, arranging visits to the property, and repeatedly requesting the garage key. She also advised him to obtain a general home inspection and offered to supply him with names of professional inspectors. She accompanied him on his own inspection and provided him with the inspection approval form, which he voluntarily signed, indicating that he accepted the property in its present "as is" condition. She reviewed the purchase agreement and explained to him that the home was being sold "as is."
 {¶ 35} Therefore, the trial court properly granted summary judgment in favor of Jaworski and 2100 Realty. Moreland's second assignment of error is overruled.
 Lentz, Davis, and ERA Lentz {¶ 36} In his third assignment of error, Moreland argues that the trial court erred in granting summary judgment in favor of Lentz, Davis, and ERA Lentz because issues of fact exist regarding material misrepresentations made to him.
 {¶ 37} Moreland claims that Lentz, Davis, and ERA Lentz committed fraudulent misrepresentations by not investigating the property before listing it and by concealing the condition of the garage. He also claims that Lentz misrepresented the seller's wishes about entry to the garage.
 {¶ 38} A cause of action cannot be maintained against the seller or its agent for fraudulent nondisclosure when the property is being sold "as is." Kossutich v. Krann (Aug. 16, 1990), Cuyahoga App. No. 57255, citing Kaye v. Buehrle (1983),8 Ohio App.3d 381, and Vilk v. Radley (Aug. 18, 1989), Lake App. No. 13087. In the instant case, the property was sold "as is" and, thus, any claim for fraudulent nondisclosure is barred.
 {¶ 39} However, even if real property is being sold "as is," a cause of action can still be maintained for fraudulent misrepresentation. Kossutich, supra. The elements for a cause of action for fraudulent misrepresentation include: (1) an actual or implied misrepresentation, (2) which is material to the transaction, (3) made with knowledge that the statement is false, (4) with the intent to mislead another, (5) who relies on the misrepresentation, and (6) with resulting injury. Southworth v.Weigand (Sept. 5, 2002), Cuyahoga App. No. 80561, citingKossutich, supra.
 {¶ 40} R.C. 4735.67 governs a real estate agent's duty to disclose the physical condition of the property, which provides, in part:
"(A) A licensee shall disclose to any purchaser all materialfacts of which the licensee has actual knowledge pertaining tothe physical condition of the property that the purchaser wouldnot discover by a reasonably diligent inspection, includingmaterial defects in the property, environmental contamination,and information that any statute or rule requires be disclosed.For purposes of this division, actual knowledge of such materialfacts shall be inferred to the licensee if the licensee acts withreckless disregard for the truth.
 (B) A licensee is not required to discover latent defects inthe property or to advise on matters outside of the scope of theknowledge required for real estate licensure, or to verify theaccuracy or completeness of statements made by the seller, unlessthe licensee is aware of information that should reasonably causethe licensee to question the accuracy or completeness of suchstatements."
 {¶ 41} Moreland claims that Lentz committed fraud by failing to disclose to Jaworski that he had never seen the interior of the garage and that he had no idea of its condition. He further claims that this nondisclosure misled Jaworski into believing that there was nothing wrong with the garage. These claims are legally and factually unfounded.
 {¶ 42} Lentz statutorily must disclose all material facts concerning the property to which he had actual knowledge, and he is not required to discover latent defects or to advise on matters outside the scope of his knowledge. R.C. 4735.67. It is uncontroverted that Lentz did not inspect the garage and, thus, he did not have actual knowledge of the condition of the garage. Thus, Lentz was not required to disclose that he never viewed the garage. Additionally, there is nothing in the record to indicate that Jaworski was misled by Lentz into believing that there was nothing wrong with the garage.
 {¶ 43} During deposition, Moreland admitted that he never had any conversations with anyone from ERA Lentz. Because he did not have any conversations with Lentz, Davis or ERA Lentz, no misrepresentation could occur. "Absent a demonstration of misrepresentation, a cause of action for fraud does not arise."Kossutich, supra, citing Hibbett v. Cincinnati (1982),4 Ohio App.3d 128. Additionally, Moreland admitted that he did not rely upon any representations or concealment by Lentz in purchasing the property. His deposition testimony included the following:
"A: Well, I had a disclosure form, and so the disclosure, tomy knowledge is supposed to state any problems, which the garageor the basement wasn't on there.
 Q: Was that your primary reliance in purchasing the house?
 A: That and looking at the home ourselves."
 {¶ 44} Moreland also claims that Lentz actively concealed the condition of the garage by failing to give Jaworski a key to the garage after repeated requests. He admitted that Jaworski contacted him for the garage key, but he stated in regard to the first request:
"My response was that the — you know, the keys were provided,they've got to be there somewhere."
 {¶ 45} After the second request by Jaworski, Lentz told her:
"That, again, the keys were there. The keys were handed to me,they were put in the box. They were there.
* * *
* * I did tell them to check the kitchen, check somewhere, thekeys have to be there. Again, if an agent had mis — had notplaced a third key back in that box, they may have put it on thekitchen counter, to check."
 {¶ 46} Lentz eventually found the key on the landing upon opening the front door of the house. However, he never told Jaworski of his discovery because he found the key six weeks after the purchase agreement was signed, when he went to remove the lockbox.
 {¶ 47} The record reveals that Lentz did not conceal the condition of the garage. The padlock was already on the garage and Lentz did not place it there. It is clear from the record that he never went inside the garage, so he did not know its condition. Additionally, he stated that he went to the house only one time after he listed the property, just to remove the lockbox.
 {¶ 48} Moreland also claims that Lentz misrepresented to Jaworski that the seller did not want anyone on the property prior to closing. Lentz stated that he told Jaworski that the seller did not want anyone to have access to the house until the title transferred. He made this representation to Jaworski without first conferring with the seller. He based this decision on being requested by the seller to take off the lockbox and to return the keys to her.
 {¶ 49} This representation to Jaworski does not constitute fraudulent misrepresentation because he did not knowingly make a false statement. His statement was based on the fact that the seller wanted the keys back and the lockbox off. Lentz stated:
"Well, again, they requested the lockbox off, they requestedthe keys, and typically I — you know, the agent just holds ontothe key until title transfers just to make it easier to give themthe keys, and when I gave the keys — they stopped over into myoffice to pick up the keys, so I handed them the keys * * * well,do you want me to keep the keys? No, we want the keys."
 {¶ 50} His decision not to allow Moreland access to the property prior to the title transfer was based upon the fact that the sellers wanted the keys back.
 {¶ 51} We find that Moreland has failed to present evidence demonstrating genuine issues of material fact as to whether Lentz made material misrepresentations to Moreland about the condition of the property. Therefore, the trial court properly granted summary judgment in favor of Lentz, Davis, and ERA Realty. Moreland's third assignment of error is overruled.
 Ksiazek — the Seller {¶ 52} In his fourth assignment of error, Moreland argues that the trial court erred in granting summary judgment in favor of the seller, Ksiazek, because genuine issues of material fact exist regarding fraudulent misrepresentations as to the condition of the house and garage.[1]
 {¶ 53} R.C. 5302.30 requires that a seller of residential real estate disclose any information that he possesses concerning the existence of a material defect in the premises. The statute requires that the seller disclose this information by delivering to the buyer a property disclosure form. In the form, the seller must disclose material matters relating to the physical condition of the property and any material defect relating to the physical condition of the property that is within the actual knowledge of the seller. See Southworth, supra.
 {¶ 54} However, R.C. 5302.30(B)(2)(g) provides that disclosure is not required when the transfer of real property is being done by a fiduciary in the course of the administration of the decedent's estate. Therefore, Ksiazek did not owe a statutory duty to Moreland to disclose any material defects in the premises.
 {¶ 55} The doctrine of caveat emptor operates to relieve the vendor of the obligation to reveal every imperfection that might exist in a residential property. Buchanan v. Geneva ChervenicRealty (1996), 115 Ohio App.3d 250, 255, 685 N.E.2d 265. Caveat emptor precludes recovery in an action concerning a defect in real estate where "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Layman v.Binns (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus.
 {¶ 56} "An `as is' clause in a real estate contract places the risk upon the purchaser as to the existence of defects and relieves the seller of any duty to disclose." Rogers v. Hill
(1998), 124 Ohio App.3d 468, 471. An "as is" clause, however, does not relieve the seller of liability for fraudulent misrepresentation or fraudulent concealment." Id.
 {¶ 57} Therefore, as long as a seller does not engage in fraud, these two principles, caveat emptor and the "as is" clause, bar any claims brought by a buyer.
 {¶ 58} Because Moreland agreed to take the property "as-is," Ksiazek was not required to disclose latent defects in order to prevail under the doctrine of caveat emptor. Therefore, Moreland's claims regarding the basement and garage are barred.Eiland v. Coldwell Banker Hunter Realty (1997),122 Ohio App.3d 446, 457.
 {¶ 59} Moreland's claim regarding the basement fails because Ksiazek adequately established the defense of caveat emptor. The problem complained of was open to observation, nothing impeded Moreland's discovering the problem, and there is no evidence that Ksiazek acted fraudulently.
 {¶ 60} Ksiazek indicated in the property disclosure form, although not statutorily required to do so, that the basement had "no leakage but some dampness in SW corner of basement." Moreland, upon inspection, noted that there was some dampness in the basement, as his deposition testimony reveals the following:
"Q: And did they voice any concerns to you?
* * *
Q: Okay. How about the house itself?
 A: The basement, they — we had noticed that it was — haddampness problems in the past.
* * *
Q: So when you inspected the home with your father and yourbrother-in-law and his dad, that was something that they pointedout to you and you were aware of when you purchased it?
 A: Correct.
 Q: It's something that you had seen before, is what I'm tryingto say.
 A: Right. Dampness."
 {¶ 61} It is clear from Moreland's deposition that he was able to observe the basement and nothing prevented his discovering the problem.
 {¶ 62} Moreland's claims against Ksiazek also fail regarding the garage because Ksiazek did not act fraudulently in padlocking the garage door. While it is true that Moreland was unable to examine the garage because no key was available, there is no evidence that Ksiazek acted fraudulently to prevent his access to the garage. Lentz stated at his deposition that Ksiazek gave him three keys, two for the house and one for the garage, and that he placed them in the lockbox. Lentz also stated that he never informed Ksiazek that the key to the garage was missing. Ksiazek thus had no way of knowing that access to the garage was unavailable.
 {¶ 63} Additionally, Moreland cannot prevail on his claim for fraudulent misrepresentation because the only representation made by Ksiazek to him was on the residential property disclosure form. Moreland has offered no evidence to indicate that Ksiazek knew of any additional problems, in the basement or in the garage, other than those already disclosed.
 {¶ 64} We find that Moreland failed to present evidence demonstrating genuine issues of material fact as to whether Ksiazek fraudulently misrepresented the condition of the property. We also find the doctrine of caveat emptor bars any claim against Ksiazek.
 {¶ 65} Therefore, the trial court properly granted summary judgment in favor of Ksiazek. Moreland's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. and Gallagher, J. concur.
[1] We note that Ksiazek's deposition was not filed in the trial court. Thus, any reference to her deposition by the parties is inadmissible for summary judgment purposes. Civ.R. 56(C).