OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Kurt L. Niermeyer and Joan J. Niermeyer, from a judgment of the Franklin County Court of Common Pleas, granting motions for summary judgment in favor of defendants-appellees, Peter Howitt, Patricia Howitt, Sorrell Company ("Sorrell"), Cook's Termite Pest Control, Inc. ("Cook's Termite"), and Russ' Quality Inspections, Inc. ("RQI").
 {¶ 2} In 1996, Peter and Patricia Howitt (collectively "the Howitts") purchased a residence located at 2137 South Parkway Drive, Columbus, Ohio, from David and Ellen Brown (collectively "the Browns"). Jeanne Favret, an agent of Sorrell, represented both the Howitts and the Browns in the transaction. Prior to the parties finalizing the agreement, the issue of termites arose, and Cook's Termite treated the house in April of 1996. A 1996 residential property disclosure form provided to the Howitts disclosed the presence of wood boring insects/termites, as well as the fact that the property had been treated. The Howitts hired their own home inspector to perform an inspection prior to the closing of the 1996 transaction.
 {¶ 3} In February 2000, the Howitts retained Favret as their agent to sell the property. A residential property disclosure form, signed by the Howitts, contained a box to check indicating whether the sellers were aware of the presence of wood boring insects/termites in or on the property, or any existing damage to the property as a result of wood boring insects/termites. That box was checked "No." In response to a question whether the owner was aware of any inspections or treatment for wood boring insects/termites, the sellers represented the following: "Property has been inspected twice by Cook's Termite and Pest Control — nothing was found."
 {¶ 4} In April 2000, Favret, appellants and the Howitts signed a dual agency disclosure statement and, later that month, appellants entered into a real estate contract with the Howitts to purchase the Howitts' residence for $580,000. Following a home inspection, the issue of termites arose, and the parties were unable to reach a satisfactory resolution. Thereafter, the purchase contract was terminated by a mutual release.
 {¶ 5} The parties, however, subsequently renewed negotiations, although Favret was not involved in these negotiations. The parties ultimately agreed that the purchase price would be reduced to $575,000, and, after reaching this agreement, Favret was contacted to draft the contract for the parties. On May 3, 2000, appellants signed a new purchase contract. The terms of that contract included the provision that the buyers had completed a home inspection and "are accepting the house in `As Is' condition based on the home inspection[.]" In a residential property disclosure form, dated May 3, 2000, the Howitts marked "yes" to a question whether the owner had knowledge of the presence of any wood boring insects/termites in or on the property. The form also contained the following description: "As in house inspection report (4-26-2000) and bug inspector report (also 4-26-2000) to Niermeyers."
 {¶ 6} The closing for the real estate transaction, finalizing appellants' purchase of the residence from the Howitts, occurred on June 28, 2000. Approximately two weeks after appellants' possession of the residence, they discovered a colony of live termites on the second floor of the residence. Appellants contacted Cook's Termite to inspect the premises, and the company recommended re-treatment of the localized areas. Appellants subsequently spent in excess of $5,000 to treat the residence.
 {¶ 7} On August 4, 2003, appellants filed a complaint against the Howitts, Sorrell, Cook's Termite, and RQI. Appellants' complaint alleged causes of action for negligence, breach of contract, fraud, intentional misrepresentation and negligent misrepresentation.
 {¶ 8} The Howitts filed an answer and cross-claim against Cook's Termite and Sorrell. The Howitts, Sorrell, RQI and Cook's Termite all subsequently filed motions for summary judgment, and appellants filed responses to the various motions.
 {¶ 9} By judgment entry filed December 10, 2004, the trial court granted the motions for summary judgment filed by Sorrell, the Howitts, Cook and RQI. Appellants filed a timely notice of appeal, and subsequently filed a notice of partial dismissal of appeal as to Cook's Termite and RQI. By journal entry filed by this court on February 15, 2005, those two parties were dismissed from this action.
 {¶ 10} On appeal, appellants set forth the following three assignments of error for review:
I. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES PETER AND PATRICIA HOWITT.
II. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE SORRELL CO.
III. THE TRIAL COURT ABUSED ITS DISCRETION BY STRIKING THE PLAINTIFFS' SUPPORTING AFFIDAVIT AND EXPERT REPORT OF BARBARA LACHOWICZ.
 {¶ 11} Under their first assignment of error, appellants assert that the trial court erred in granting summary judgment in favor of the Howitts. Appellants maintain that they established genuine issues of material fact regarding their claims for fraud and misrepresentation, thereby precluding summary judgment.
 {¶ 12} In Williams v. Blank, Franklin App. No. 05AP-22,2005-Ohio-3541, at ¶ 11-12, this court outlined the applicable standard of review by an appellate court from a trial court's grant of summary judgment, stating as follows:
This court reviews de novo a trial court's granting of summary judgment. Burden v. Hall, Franklin App. No. 04AP-52,2005-Ohio-2799, at ¶ 23. Pursuant to Civ.R. 56, in order to obtain summary judgment, a movant must demonstrate: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, such party being entitled to have the evidence construed most strongly in his or her favor. Zivich v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370.
The Ohio Supreme Court has held that a party seeking summary judgment "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If the moving party satisfies its initial burden," the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.
 {¶ 13} Under Ohio law, the doctrine of caveat emptor governs real property sales transactions, and "relieves a vendor of the obligation of revealing every imperfection that may exist in a residential property." Garvey v. Clevidence, Summit App. No. 22143, 2004-Ohio-6536, at ¶ 20. The Ohio Supreme Court has held that the doctrine precludes recovery in an action by a real estate purchaser for a structural defect in instances where: "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Layman v. Binns (1988),35 Ohio St.3d 176, syllabus. A vendor, however, "has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection." Id. at 178.
 {¶ 14} The elements of an action for fraudulent misrepresentation are: (1) a representation, or where there is a duty to disclose, the concealment of a fact; (2) that is material to the transaction; (3) made falsely, with knowledge of its falsity, or made with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or the concealment; and (6) resulting injury proximately caused by the reliance.Fifth Third Bank v. Cope, 162 Ohio App.3d 838, 2005-Ohio-4626, at ¶ 25, citing Cardi v. Gump (1997), 121 Ohio App.3d 16, 22.
 {¶ 15} Regarding their fraud claim, appellants argue it is undisputed the Howitts had knowledge of active termites, and that termite damage permeated the house during the 1996 transaction. Appellants further contend that the Howitts, even after appellants were alerted to "old termite damage," never disclosed their complete knowledge of the termite damage in the home; rather, appellants argue, the Howitts represented to them that the home had no termites. Appellants also argue that there is evidence the Howitts actively concealed areas of the house where termite damage was located. Appellants maintain the Howitts had a clear duty to disclose their knowledge of latent termite infestation within the residence, yet failed to disclose the full extent of their knowledge on two separate property disclosure forms.
 {¶ 16} In granting summary judgment in favor of the Howitts, the trial court found that appellants were unable to satisfy the justifiable reliance element. More specifically, the court held that, regardless of the information on the disclosure forms, and even if there existed an issue of fact as to whether the Howitts misrepresented information as to insects/termites, appellants could not show justifiable reliance because they had actual knowledge of wood boring insects and termites at the time they entered into the "as-is" purchase agreement. Thus, armed with such knowledge, appellants had a duty to inquire further.
 {¶ 17} Upon review, we agree with the trial court that appellants are unable to satisfy the justifiable reliance requirement. The record is undisputed that appellants, during the negotiations for the first real estate purchase contract, were put on notice that termites had previously infested the home, and that there was damage to the property.
 {¶ 18} On April 16, 2000, according to the deposition testimony of appellant Kurt Niermeyer (individually "Niermeyer"), appellants' inspector, Chris Chakroff, showed Niermeyer "on the first floor and in the basement what appeared to be old termite damage." (Niermeyer Depo., at 18.) The holes were "kind of covered up" on the sides of the dormer, and Chakroff "indicated that this might be a problem." (Niermeyer Depo., at 18.) At that point Niermeyer spoke with Russ Campbell, an inspector with RQI, who had also been at the house that day. Campbell pointed out some areas where he found termite damage, indicating he believed it was old damage.
 {¶ 19} Following his inspection, Campbell prepared a report, in which he noted the presence of termite shelter tubes in the basement and closet west of the stairs, as well as in the furnace room at the south wall in the southeast corner and adjacent area and crawl space. During his inspection, Campbell broke open the shelter tubes but did not find any evidence of live termites. Campbell also observed damage from wood-destroying insects in the subfloor and floor joists at the southeast corner of the furnace room, in the room upstairs of that area, and on the trim board on the exterior door of the balcony off the master bedroom.
 {¶ 20} Following his inspection, Chakroff prepared a "building analysis report summary," which stated in part:
* * * Rear sunroom double door: insects have damaged the doorframe, threshold and sunroom floor and floor joist in the basement. The damage appears to be more severe along its north side. After probing I feel that the extent of the damage is likely to be extensive inside the wall from the floor to possibly the flat roof above. Destructive investigating is recommended at this time. * * *
 {¶ 21} Appellants outlined their concerns about termites in a "Buyer's Request to Remedy Unsatisfactory Conditions," dated May 1, 2000, which contained a provision for the seller to agree to "two additional days with regard to the home inspection * * * with regard to the `bug/structural' problems outlined in buyer's home inspection and resolution of those issues." Because the issue of insects/termites was not resolved, the parties executed, on May 2, 2000, a mutual release of the initial purchase agreement.
 {¶ 22} When asked whether he knew there may have been hidden damage from insects prior to signing the second purchase contract, containing the "as-is" clause, Niermeyer stated he was "aware" of Chakroff's report, and the fact that "in that report he says the extent of damages could be extensive but I didn't know the extent of it." (Niermeyer Depo., at 69.) As to whether he was aware there had been prior treatment for termites, Niermeyer stated: "I know there was prior damage, but I didn't know the extent or, if at all, what treatment was done for it." (Niermeyer Depo., at 80.)
 {¶ 23} Appellant Joan Niermeyer stated in her deposition that she was aware of the presence of drilled holes in the basement area, and the fact that there had been termites and that they had been treated. She was also aware of Chakroff's report stating: "Destructive investigating is recommended at this time." (Joan Niermeyer Depo., at 81.) After speaking with Chakroff, she "questioned some structural things back there, and then that kind of gave me the red flag to look into it a little deeper because it just did not sit right with me." (Joan Niermeyer Depo., at 23.)
 {¶ 24} Joan Niermeyer testified that she spoke with Peter Howitt about her concerns of possible insect damage, and that Howitt told her "if we wanted to tear the back of the house off to see if there were bugs, we could do that but he wasn't paying for it." (Joan Niermeyer Depo., at 32.) After that discussion, appellants believed they could "probably fix what we thought was wrong under the assumption of the bug inspection, that it was just old damage." (Joan Niermeyer Depo., at 32.) She acknowledged, however, that she was not confident the insect damage was just old damage, despite the inspection report.
 {¶ 25} In Moore v. Daw (Aug. 20, 1996), Muskingum App. No. CT-95-20, the plaintiffs brought an action for fraud against a seller and real estate agent arising out of the purchase of a home in which, following the purchase, active termites were discovered when a contractor cut through an existing wall. Prior to the purchase, plaintiffs were informed that a termite inspection indicated the house had been previously treated but that there were no termites. The trial court granted summary judgment in favor of defendants, noting that plaintiffs had actual knowledge of the previous infestation of termites and should have been placed on guard. On appeal, the court in Moore
affirmed on the basis that appellant could not establish the element of justifiable reliance, holding in part: "Once appellant had knowledge of previous treatment, he was required to `* * * exercise proper vigilance in his dealings, so that where one is put on notice as to any doubt to the truth of a representation, the person is under a duty to reasonably investigate before reliance thereon.'" Id., quoting Foust v. Valleybrook RealtyCo. (1981), 4 Ohio App.3d 164, 165.
 {¶ 26} In Cardi, supra, the plaintiff brought a claim for fraudulent misrepresentation regarding the extent of water damage in a basement. While a property disclosure form signed by the seller indicated the basement had no current water leakage, inspectors warned the plaintiff, prior to the purchase, that he should inquire further into the drainage system. After taking possession, the basement flooded and plaintiff brought an action for fraud. The court in Cardi affirmed the trial court's grant of summary judgment in favor of the seller, holding that, even though plaintiff presented evidence that the seller knowingly misrepresented the extent of water damage in the basement, plaintiff could not show justifiable reliance. More specifically, based upon the fact plaintiff was on notice of potential problems through his own observations and the inspection reports, plaintiff "was not justified in relying on the protestations of Gump that there was no water leakage into the basement[.]"Cardi, at 22-23.
 {¶ 27} Applying those principles to the present case, we agree with the trial court that appellants, having notice of prior termite infestation and damage to the residence, had a duty to make further inspection. See Cardi, supra; Riccardi v.Levine (May 11, 2000), Cuyahoga App. No. 76215 ("[w]hen a person has the opportunity to investigate, and when the circumstances would cause a person of ordinary care to investigate, and that person fails to do so, the element of justifiable reliance will not be proven"); Tipton v. Nuzum (1992), 84 Ohio App.3d 33, 38
("[o]nce alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises"); Gentile v. Ristas, 160 Ohio App.3d 765,2005-Ohio-2197, at ¶ 62 (even if evidence, construed in favor of plaintiffs, could raise reasonable inference that defendant intentionally misrepresented or concealed the presence of termites or termite damage, plaintiffs could not have justifiably relied on any such misrepresentation in light of inspector's report of a wood-destroying insect infestation and warning that need for treatment could not be assessed without further investigation).
 {¶ 28} Here, because appellants were unable to justifiably rely upon the Howitts' alleged misrepresentations regarding the extent of prior termite problems, the trial court did not err in granting summary judgment in favor of the Howitts as to appellants' claims for fraud and misrepresentation. Accordingly, appellants' first assignment of error is without merit and is overruled.
 {¶ 29} Appellants' second and third assignments of error are interrelated and will be considered together. Under the second assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of Sorrell. Appellants argue that Sorrell's employee, Favret, as the real estate agent in the 1996 transaction between the Browns and the Howitts, was aware the residence had undergone extensive treatment but failed to disclose such information to appellants. Appellants maintain that they presented sufficient evidence upon which a trier of fact could find negligence and/or fraud on the part of Sorrell.
 {¶ 30} Under the third assignment of error, which we will consider initially, appellants assert that the trial court abused its discretion in striking the affidavit and report of Barbara Lachowicz. By way of background, in support of their claim against Sorrell that Favret was negligent in her representation of appellants, appellants retained Lachowicz, identified in her affidavit as a real estate broker and agent, to review documents and render an opinion based upon her education, training and experience. Appellants filed the affidavit and report of Lachowicz in support of their memorandum contra Sorrell's motion for summary judgment. Sorrell subsequently filed a motion to strike the affidavit and report, which the trial court granted.
 {¶ 31} Appellants contend the trial court erred in finding that the affidavit and report failed to meet the requirements of Civ.R. 56(E). Appellants argue that the fact Lachowicz is licensed by the state as both an agent and a broker establishes that she has the requisite skill, knowledge, experience, training and education necessary to testify as to matters in her report.
 {¶ 32} Pursuant to Civ.R. 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Affidavits that are not based upon personal knowledge or that fail to set forth facts that would be admissible in evidence are subject to a motion to strike. Samadder v. DMF of Ohio, Inc., 154 Ohio App.3d 770,2003-Ohio-5340, at ¶ 17. A trial court's decision to grant a motion to strike will not be overturned on appeal absent an abuse of discretion. Id.
 {¶ 33} In the present case, the affidavit of Lachowicz references a report she prepared which was attached to the affidavit. In the report, Lachowicz indicates that she reviewed the "extensive file of documents associated with the sale of 2137 South Parkway Drive." Lachowicz stated that, in her professional opinion, there was "deviation from the standard of care to be provided," and that, "[m]ore likely than not, had the purchasers been supplied all information available referencing the wood destroying insect issue, they would have searched for another property."
 {¶ 34} The trial court granted Sorrell's motion to strike the affidavit on the basis that it stated only legal conclusions, and failed to outline any facts supporting such conclusions, thus failing to comply with Evid.R. 705 or Civ.R. 56. We agree with the trial court that the opinion was merely conclusory, and that Lachowicz did not support her conclusion with any facts. Affidavits that merely state legal conclusions or opinions without setting forth supporting facts are insufficient to meet the requirements of Civ.R. 56(E). Stamper v. Middletown Hosp.Assoc. (1989), 65 Ohio App.3d 65, 69. See, also, Crawford v.Millar Elevator Serv. Co. (May 11, 2000), Cuyahoga App. No. 77277 ("[e]ven a properly qualified expert may not give testimony which merely contains Conclusions of Law, without supporting facts"). Here, the affidavit and report lacked credible support and did not create a genuine issue of material fact for trial; thus, the trial court did not abuse its discretion by granting the motion to strike, and appellants' third assignment of error is not well-taken.
 {¶ 35} We next address appellants' contention that the trial court erred in granting summary judgment in favor of Sorrell on appellants' negligence claim. The elements of negligence are "the existence of a duty, a breach of that duty and injury resulting proximately therefrom." Mussivand v. David (1989),45 Ohio St.3d 314, 318. In general, a real estate agent owes a fiduciary duty to his or her clients. Moreland v. Ksiazek, Cuyahoga App. No. 83509, 2004-Ohio-2974, at ¶ 20. A real estate agent has a duty to disclose all material facts concerning the property to which he or she had actual knowledge, but is not required to discover latent defects or to advise on matters outside the scope of his or her knowledge. Id. at ¶ 42.
 {¶ 36} As to the issue of duty to disclose, the trial court noted in its decision that appellants' own deposition testimony indicated Favret advised appellants that the property had prior termite damage and had previously been treated. A review of the record supports the court's finding. In her deposition, when asked about her conversations with Favret regarding insect issues, Joan Niermeyer acknowledged that Favret discussed "old termite damage but no live bugs." (Joan Niermeyer Depo., at 45.) Joan Niermeyer also indicated that she had specific discussions with Favret about homes in the area, including the home at issue, having prior treatment. (Joan Niermeyer Depo., at 116.)
 {¶ 37} The trial court further held that, even assuming Sorrell, through its agent, breached a duty by failing to fully disclose all the information it should have, the element of proximate cause was lacking, as appellants did not rely on statements by Favret in deciding to purchase the property. We agree.
 {¶ 38} It is undisputed that the first real estate purchase contract fell through because the issue of termites was not resolved, and that all of the parties, including Favret, signed a mutual release on May 2, 2000, discharging such parties "from any and all liability, claims, actions, suits, or any other courses of action and demands arising out of or related to the Contract." The parties subsequently signed a second purchase agreement, at a reduced price, providing in part that the buyers had completed a home inspection and "are accepting the house in `As Is' condition based on the home inspection[.]" Under these circumstances, appellants have not established a genuine issue of material fact demonstrating that acts or omissions of Sorrell or its agent proximately caused the damages claimed. Thus, the trial court did not err in granting summary judgment in favor of Sorrell as to appellants' negligence claim.
 {¶ 39} As noted, appellants also contend the trial court erred in granting summary judgment in favor of Sorrell on appellants' claim for fraud. We disagree.
 {¶ 40} We have previously discussed, in addressing appellants' first assignment of error, appellants' knowledge regarding prior termite infestation and damage before they signed the second "as-is" purchase contract. The trial court, in considering appellants' claim for fraud, found that appellants could not demonstrate that their reliance on any alleged representation and/or omission by Favret was justified in light of appellants' actual knowledge of the home's history of termite treatment and damage. Specifically, the trial court held in part:
* * * Plaintiffs were aware of the inspector's concerns and recommendation for destructive investigation to determine the extent of the damage. In fact, the issue of termite damage and whether or not to engage in destructive investigation is what lead to the termination of the first purchase contract. Then, after the Mutual Release was signed terminating the first purchase contract, the parties negotiated, without Favret and agreed to a new purchase price and an "as is" contract. Favret was contacted to draft the contract after the parties reached an agreement. Therefore the court agrees with Sorrell that the plaintiffs did not rely on anything Favret said or did not say when deciding to purchase the home. The contract clearly states that the property was being sold "as is" with knowledge of the home and pest inspection reports relating to termites/insects. Further, the plaintiffs have not provided any evidence that Favret made a representation or omission related to the termite issue after May 2, 2000, let alone anything upon which they relied on when entering into the second purchase contract. Because the court finds that plaintiffs have failed to establish justifiable reliance, the court finds that plaintiffs' fraud, intentional misrepresentation, and negligent misrepresentation claims fail as a matter of law.
 {¶ 41} For reasons previously addressed, and, based upon the trial court's analysis above, we find the trial court properly concluded that appellants failed to establish justifiable reliance in this case. Accordingly, the trial court did not err in granting summary judgment in favor of Sorrell on appellants' fraud claim.
 {¶ 42} Appellants' second and third assignments of error are without merit and are overruled.
 {¶ 43} Based upon the foregoing, appellants' three assignments are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.