OPINION
{¶ 1} Plaintiffs-appellants, Mary and Paula Cliff, appeal the grant of summary judgment by the Clermont County Court of Common Pleas in favor of defendants-appellees, James Hood, ReMax Unlimited, and Michael and Susan Loudenslager, concerning appellants' purchase of a house from the Loudenslagers. We affirm.
 {¶ 2} On August 30, 2001, appellants purchased a house from the Loudenslagers located at 4327 Cider Mill Drive, Cincinnati, Ohio. Appellants were represented in the real estate transaction by Shirley Trester, a real estate agent employed by Coldwell Banker. The Loudenslagers were represented in the sale of their house by appellees James Hood and ReMax Unlimited.
 {¶ 3} Appellants state that the parameters for their house search included a ranch-style design, that the house have a dry basement, and that it did not have termite issues. Appellants were first shown the Cider Mill house on July 28, 2001.
 {¶ 4} That day, appellants were presented with the Residential Property Disclosure Form that the Loudenslagers completed earlier that month. Under the section "WOOD BORING INSECTS/TERMITES," the Loudenslagers indicated that they did not know of the presence of any wood boring insects/termites in or on the property or any existing damage to the property caused by wood boring insects/termites. They also indicated that within the past five years, they knew of "preventative maintenance and inspections" for wood boring insects/termites on the property. Susan Loudenslager testified that she hired Terminix to treat the house in order to prevent termite migration from a neighbor's tree and that she treated the foundation herself periodically with over-the-counter insecticide. It was undisputed that the Loudenslagers were unaware of any termite infestation issue on July 11, 2001 when they completed the form.
 {¶ 5} Appellants signed a purchase contract for the house on July 28, the same day it was first shown to them. On August 5, 2001, appellants inspected the house. They were accompanied by Ron Rowe, a family friend of appellants who had experience rehabbing properties; a plumber known by Ron Rowe; Trester; and appellants' father. The inspection included an examination for termites, and Ron Rowe advised appellants that because the foundation of the house was high, it helped prevent termite problems.
 {¶ 6} There is disputed evidence concerning whether Trester next sought approval to call a termite specialist to perform an inspection. Appellants claimed that Trester never requested consent and consent was never given. Appellants further testified that Trester ordered a termite inspection from Neal Termite and Pest Control ("Neal Termite") and paid for the inspection using her own funds. Trester, however, testified in her deposition that after inquiring into the qualifications of appellants' personal home inspectors, Trester suggested to appellants that a professional termite inspector inspect the house. According to Trester, appellant Mary Cliff told Trester to call and order the professional inspection.
 {¶ 7} It is undisputed evidence that Trester called James Neal of Neal Termite to perform the inspection. He inspected the house on August 13, 2001, and discovered live termites behind the band board under the front entry. Neal Termite informed Trester of the inspection results and Trester in turn contacted Hood. Hood contacted the Loudenslagers who stated that they would agree to pay for the house's termite treatment. Hood called Trester and informed her of the same. According to Trester's deposition, she advised appellants of the termites and told them that the Loudenslagers would pay for treatment. Appellants dispute this claim.
 {¶ 8} On the morning of August 30, 2001, appellants met with the Loudenslagers and Hood at the house closing. Appellants claim that they had a conversation with Hood prior to the closing during which Hood told appellants that they were "getting a wonderful house." According to appellants' testimony, they explained that they thought it was a good house even though it was not a ranch-style house like they wanted, the house had a dry basement and no termites. Appellants testified that Hood repeated that they were "getting a wonderful house" and added they were also getting "wonderful neighbors" because he lived across the street. Hood denied that this conversation took place.
 {¶ 9} Appellants claim that they first learned of the termite problem later that afternoon, several hours after the closing. Appellant Mary Cliff testified that when she visited the house, she noticed a strong chemical odor. She claimed that the Loudenslagers informed appellants of the termite treatment at that time. In her deposition, Mary Cliff stated that she called an attorney that day. Despite appellants' claims that they would not have entered the contract had they known of the termite presence at closing, there is no indication in the record that appellants attempted to execute any right of rescission or avoidance of the contract upon the alleged discovery of the termites' existence that same day. In fact, appellants filed their original complaint on August 29, 2003, nearly two years after the closing.
 {¶ 10} On August 3, 2005, appellants filed a second amended complaint that included the Loudenslagers, Hood and Remax Unlimited, Trester and Coldwell Banker, and Neal Termite as defendants. Appellants' claims included fraudulent misrepresentation and fraudulent concealment among others. On December 9, 2006, the trial court issued its decision granting summary judgment in favor of the Loudenslagers, Hood and ReMax Unlimited. The court entered judgment with respect to these three defendants shortly thereafter. Appellants now appeal the trial court's decision raising two assignments of error:
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO THE FIRST CLAIM OF THE SECOND AMENDED COMPLAINT."
 {¶ 13} In the first assignment of error, appellants argue that the trial court erred when it granted summary judgment in favor of the defendants with respect to appellants' fraudulent misrepresentation claim. Appellants claim that Hood's statement at closing that appellants were "getting a wonderful house" was a positive representation that the house did not have termites upon which they relied and were injured because of such reliance.
 {¶ 14} An appellate court's standard of review for summary judgments is de novo; the appellate court reviews the trial court's judgment independently and without deference to the trial court's determination. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. A motion for summary judgment should be granted only where it is shown that (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the nonmoving party being entitled to have the evidence construed most strongly in his or her favor. Harless v. Willis DayWarehousing, Co. (1978), 54 Ohio St.2d 64, 66. The moving party has the burden of showing that no genuine issue exists as to any material fact. Id.
 {¶ 15} In order to prevail on a fraudulent misrepresentation claim, appellants are obligated to establish all of the following elements: "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such other disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance."Fifth Third Bank v. Cope, 162 Ohio App.3d 838, 2005-Ohio-4646, ¶ 25, citing Cardi v. Gump (1997), 121 Ohio App.3d 16, 22.
 {¶ 16} Appellants argue that the trial court erred when it discussed only the Loudenslagers' completed Residential Property Disclosure Form as the only positive representation by appellees concerning the presence of termites in the house. They claim that Hood's statements that they were "getting a wonderful house" constitutes a fraudulent misrepresentation.
 {¶ 17} We find that Hood's statement does not rise to the level of fraud. Despite appellants' claim that the statement was made in the context of appellants' expressing satisfaction that the house had a dry basement and no termites, "You're getting a wonderful house" is not the positive misrepresentation that appellants claim it to be. Specifically, appellants maintain the statement is tantamount to Hood stating that appellants were "getting a house without termites." We disagree.
 {¶ 18} The statement was a subjective remark about the quality of the house. As such, it cannot be verified as truthfully or falsely made. There can be no evidence that how "wonderful" the house was constituted a material fact to the transaction. There is no evidence that the statement was made with the intent to mislead appellants into relying upon it. Likewise, there is no evidence that appellants justifiably relied on the "wonderful house" statement in determining whether to purchase the house.
 {¶ 19} Furthermore, appellee Hood's statement would have been made under the reasonable belief that appellants already knew of the termite problem. It is well-settled common law in Ohio that the knowledge of an agent, received while she is acting within the scope of her authority and in reference to a matter over which her authority extends, is imputed to such agent's principal. See Fay v. Swicker (1950), 154 Ohio St. 341, paragraph one of the syllabus. Trester, appellants' agent, first informed Hood of the termite problem. The Loudenslagers discovered the termite problem from Hood. Because appellees learned of the issue from appellants' agent herself, appellees could reasonably rely on the fact that the agent's principals were aware of the termite issue as well.
 {¶ 20} Hood's interactions with Trester, however, were not limited to the discovery of termites in the house. These dealings also included the negotiation between the Loudenslagers and Cliffs, albeit through their respective agents, to have the house treated before closing. Hood's statement that appellants were getting a "wonderful house" was thus made not only upon his reasonable belief that appellants knew the house had termites but also that appellants knew the Loudenslagers offered to have the house treated, that the treatment provided no impediment to the house's sale, and that the house was being treated in compliance with appellants' desire as expressed by their agent. The statement does not rise to the level of fraud. We find appellants' argument with respect to the alleged fraudulent misrepresentation to be without merit. Accordingly, we overrule the first assignment of error.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AS TO THE SECOND CLAIM OF THE SECOND AMENDED COMPLAINT."
 {¶ 23} In the second assignment of error, appellants argue that the trial court erred when it granted summary judgment in favor of appellees with respect to appellants' fraudulent concealment claim. Appellants allege that Hood and the Loudenslagers withheld knowledge of the termite infestation after discovery on August 13. Appellants claim that appellees had a duty to disclose this new information to appellants and that appellants would not have purchased the house had they known of the termite problem.
 {¶ 24} R.C. 5302.30 requires sellers of residential real estate to complete a disclosure form that informs potential buyers of "material matters relating to the physical condition of the property to be transferred, * * * the condition of the structure of the property, including the roof, foundations, walls, and floors[.]" R.C. 5302.30(D). However, sellers are required to disclose only those defects that are within their actual knowledge. Id. The disclosure form is not a substitute for a careful inspection by potential purchasers. Under the statute, the duty to conduct a full inspection falls on the purchasers, not the sellers. Clark v. Allen, 154 Ohio App.3d 200,2003-Ohio-4617, ¶ 19.
 {¶ 25} As described previously, in order to prevail on a fraudulent concealment claim, appellants must establish the following elements: "(1) * * * where there is a duty to disclose, a concealment of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such other disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the * * * concealment, and (6) a resulting injury proximately caused by the reliance." Fifth Third Bank v. Cope,2005-Ohio-4646 at ¶ 25.
 {¶ 26} Appellants' argument that appellees failed to disclose the fact that the house had termites is without merit. With respect to the disclosure form, the record is undisputed that the Loudenslagers had no actual knowledge of the termites' presence when the form was completed. No one was aware of the termite problem until after the Neal Termite inspection.
 {¶ 27} We find there is nothing in the record that supports appellants' assertion that Hood and the Loudenslagers concealed the termite issue from appellants. Appellees, in fact, relied upon the revelation of the termite presence by appellants' agent whose knowledge is imputed to appellants themselves. Hood and the Loudenslagers had a right to rely upon the representations of Trester. They reasonably believed that appellants were informed of the Loudenslagers' offer to pay for the termite treatment. Appellees further relied upon the belief that the treatment posed no impediment to closing, and the house was subsequently treated. Appellees cannot conceal a fact that was brought to their attention only by appellants' agent. Accordingly, the second assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Walsh, P.J., and Young, J., concur.