[Cite as *Bencivenni v. Dietz*, 2013-Ohio-4549.]

## +IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| KELLY J. BENCIVENNI, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2012-L-127** |
| MARILYN V. DIETZ, INDIVIDUALLY, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 08 CV 003815.

Judgment: Affirmed.

*Michael R. Bencivenni*, 1370 Ontario Street, Suite 1810, Cleveland, OH 44113, *John M. Gundy, Jr.*, The Gundy Law Firm, Commerce Park, Building IV, 23240 Chagrin Boulevard, #450, Beachwood, OH 44122, and *Clark D. Rice*, Koeth, Rice & Leo Co., L.P.A., 1280 West Third Street, Third Floor, Cleveland, OH 44113 (For Plaintiffs-Appellants).

*Victor D. Radel*, 1111 Superior Avenue, Suite 530, Cleveland, OH 44114 (For Defendants-Appellees).

DIANE V. GRENDELL, J.

{¶1} Plaintiffs-appellants, Kelly and Michael Bencivenni, appeal from the judgment of the Lake County Court of Common Pleas, granting defendants-appellees, Realty One, Inc., Realty One Real Living, and Connie McCann's, and Marilyn V. Dietz's, Motions for Summary Judgment. The issue to be determined by this court is whether a home buyer who is given information during an inspection regarding damages and

defects in a home prior to the completion of the purchase is prevented from prevailing on fraud-related claims against the seller, due to a lack of justifiable reliance on the seller's claims regarding the condition of the home.  For the following reasons, we affirm the decision of the trial court.

{¶2}  Marilyn Dietz purchased a home located at 8779 Pheasant Lane, in Kirtland, Ohio, on June 17, 1997.  She listed the property for sale in August of 2003, but later took it off of the market.  On April 27, 2004, Dietz relisted the property.  The Bencivennis, after viewing the home with their real estate agent, Connie McCann, signed a Purchase Agreement with Dietz on May 28, 2004.  They had a home inspection conducted by inspector Jay Womack on June 9, 2004.  Following the inspection, an Amendment to Purchase Agreement and Removal of Concurrency/Contingencies was executed, removing inspection contingencies contained in the Purchase Agreement, subject to the repair of certain items by Dietz.  The Bencivennis took ownership of the residence in August of 2004 and moved in on October 12, 2004.

{¶3}  On December 4, 2008, the Bencivennis filed a Complaint against Marilyn V. Dietz, Individually, Marilyn V. Dietz, Trustee of Trust Dated May 5, 1997, Realty One, Inc., Realty One Real Living, Hanna Holding, Inc., and Connie McCann.[1]  Pursuant to the Complaint, Dietz, as the seller of the Pheasant Lane property, and McCann, as the Bencivennis' real estate agent, knew or should have known that the home had defects, failed to apprise the Bencivennis of the defects, and misrepresented the value of the property.  The Residential Property Disclosure Form, provided by Dietz, failed to state

---

1. The Bencivennis filed a Complaint related to the same matter in Cuyahoga County Court of Common Pleas Case No. CV-05-579207 on December 8, 2005.  A notice of voluntarily dismissal without prejudice was filed by the Bencivennis on December 1, 2008.

2

any known defects to the property and Dietz also made false representations regarding the condition of the home. After moving into the home, the Bencivennis noticed water seepage and other problems, including roof damage, which required them to undertake repairs to the home.

{¶4} Count One raised a claim for Fraudulent Concealment, asserting that Dietz "failed to disclose to the plaintiffs" problems with the home and repeatedly denied that she had ever experienced any water intrusion. Count Two, for Fraudulent Misrepresentation, alleged that Dietz made "actual and/or implied representations relative to the nonexistence of any material defects with respect to the premises." In Count Three, the Bencivennis raised a claim for Fraudulent Nondisclosure, asserting that Dietz had violated her duty as the seller to disclose known defects related to the residence. Finally, in Count Four, for Misrepresentation by Agent, the Complaint asserted that McCann, as an employee of Realty One and acting as the Bencivennis' real estate agent, made "affirmative misrepresentations" to induce them to purchase the property.

{¶5} Defendants Realty One, Realty One Real Living, and McCann ("Realty One defendants") filed an Answer and Cross-Claim on January 7, 2009.

{¶6} An Amended Complaint was filed on January 21, 2009, removing Hanna Holdings as a defendant. A Notice of Dismissal was filed on the same date, dismissing Howard Hanna without prejudice. The Realty One defendants filed an Answer to the Amended Complaint on February 13, 2009.

{¶7} On February 9, 2009, Dietz filed an Answer, which raised a Cross-Claim. Dietz also filed a Counterclaim against the Bencivennis, asserting that their lawsuit was

3

frivolous and malicious.

{¶8} On March 10, 2009, the Bencivennis filed a Motion to Dismiss Dietz's Counterclaim for failure to state a claim upon which relief can be granted. This Motion was denied by the trial court in a May 28, 2009 Order.

{¶9} The Realty One defendants filed a Motion for Summary Judgment on Dietz's Cross-Claim on July 31, 2009.

{¶10} On the same date, the Realty One defendants filed a Motion for Summary Judgment as to the Bencivennis' Complaint. They asserted that the Bencivennis were aware of any defects to the property at the time of purchase and that it was purchased in as-is condition. The Bencivennis subsequently filed a Brief in Opposition, arguing that McCann made misrepresentations regarding the property.

{¶11} On August 21, 2009, Dietz filed a Motion for Summary Judgment on the Bencivennis' Complaint. She asserted that the claims were barred by the doctrine of caveat emptor and that all of the conditions complained of were observable, discovered, or discoverable during the home inspection, especially since the Bencivennis had unimpeded access to the home to complete their inspections. She further asserted that the inspector informed the Bencivennis of multiple problems in the home and they could not meet the element of justifiable reliance.

{¶12} Attached to the Motion for Summary Judgment was an affidavit of Dietz, attesting to the fact that she did not conceal or fail to disclose any leaks or other issues with the home and that the Bencivennis were granted "unfettered and complete access" to the entire home.

{¶13} Also attached was the Residential Property Disclosure Form, dated April

4

27, 2004, completed and signed by Dietz. This form stated that Dietz knew of no leaks in the home. She did indicate that there was moisture damage to the kitchen ceiling, which would be repaired. The Purchase Agreement, signed by Dietz and the Bencivennis, indicated that Dietz would repair the ceiling in the kitchen and that the Bencivennis also requested the repair of loose tape seams in the great room.

{¶14} On September 8, 2009, the Bencivennis filed a Motion for Summary Judgment on the Counterclaim filed by Dietz, arguing that a frivolous lawsuit claim cannot be raised until after the underlying lawsuit is resolved.

{¶15} In the Bencivennis' Brief in Opposition to Dietz's Motion for Summary Judgment, filed September 9, 2009, they argued that caveat emptor did not bar their claims, since the evidence showed fraud was committed. Attached was the affidavit of Michael Bencivenni, who averred that Dietz did not disclose the water seepage issues and that Dietz denied such a problem. Also attached was a 2003 disclosure form from the prior attempted sale, in which Dietz had disclosed that the roof was previously repaired and that a new water pump was added in 2003. This document was not provided to the Bencivennis prior to their purchase of the home.

{¶16} The following testimony was given during depositions filed with the trial court and referenced in the Motions for Summary Judgment.

{¶17} Dietz explained that she had some repair work performed while she owned the home, which included painting, replacement of a window in the library due to the rotting of a window frame from water damage, and fixing a bathroom leak. She denied having problems with water intrusion in the basement of her home. After reviewing various records produced by the Bencivennis relating to past work performed

5

on her home, she also explained that wood near a bedroom window was repaired, latticework was added to the deck, a storm drain was installed on the driveway, a wall was retextured to create a wine room, a brick wall near the front door was reflashed, and the roof was repaired due to ice backup, which caused staining in the breakfast/morning room and the master bedroom, which was repainted.

{¶18} Dietz explained that she did not disclose various issues related to ice buildup and roof repairs done in 1999 and 2000 on the 2004 disclosure form, since she had not had a problem with the roof since those repairs were completed. She could not recall whether she had disclosed any information related to the roof and water intrusion to the Bencivennis. She testified that she told the inspector, Jay Womack, about the roof repair during the inspection and that he "could see the difference in the shingles, the new shingles, opposed to the older ones."

{¶19} Jay Womack, owner of American Building Inspections, performed the inspection at the home on June 9, 2004, at the Bencivennis' request. He explained that some flaws in a home cannot be discovered during an inspection, especially if they are concealed or not "readily visible." According to Womack, Michael Bencivenni, Dietz, and McCann were present during the inspection.

{¶20} The Building Inspection Report, prepared by Womack on the date of the inspection, was submitted as evidence. In this Report, Womack indicated the following: "Grading/drainage improvements recommended"; the patio had a "negative pitch/settled-need to raise level"; outside steps needed "tuck point/missing mortar"; "due to age and/or condition" of the roof, the owners should "budget for repair or replacement," but no roof leaks were observed; the fireplace chimney needed

seal/caulk; the windows/skylights needed caulking/repair; there were "cracks at chimney tops" which needed "tuckpointing/masonry repairs"; and there was "missing mortar at window sills/signs of water intrusion/damage." As to the basement, the Report noted that the walls were covered or visibility limited, there were "some signs" of dampness/seepage and "water stains." Regarding the basement ceiling, the report noted that there were "signs of water damage/intrusion below front bay window" and a box was checked, indicating "signs of past or present leaks." As to the heating and cooling, the Report stated that there was "restricted access for service in attic * * */noisy air handler/conducive to ice build-up." The report noted that there was a leak in a second floor bathroom that damaged the drywall in the kitchen.

{¶21} Womack testified that in his inspection report, any items marked "not satisfactory" were areas that need "immediate attention." He explained the various defects he found in the home, including that there were signs of past or present leaks in the basement, that he saw "water stains" in the basement, and water damage below the front bay window. Regarding the basement walls in the wine room area, Womack stated that he had observed Thoroseal, or dry-lock, on the walls, which he noted is used either as a preventative measure to keep moisture from coming inside or as a response to past moisture problems.

{¶22} Womack explained that the lack of caulking on the front bay window needed to be repaired and caused water damage in the basement. He recalled "going out by the bay window in the front" during the inspection with Michael Bencivenni and that "we saw that there were some gaps * * * where it needed caulking and tuck-pointing."

{¶23} Womack stated that he did mark on his report that the heater in the attic was conducive to ice buildup, but did not see signs of past ice buildup related to that condition. It was his standard practice to discuss the consequences of ice buildup, such as water leakage or damage. After inspections, it is also his policy to go over the report, page by page, and he went over the report with Michael Bencivenni.

{¶24} Real estate agent McCann showed the home to the Bencivennis. She testified that during one showing, Dietz was discussing past water intrusion into the great room, during which time Kelly Bencivenni was present. McCann explained that she did not provide the disclosure form from the 2003 listing to the Bencivennis.

{¶25} Kelly Bencivenni explained that she viewed the property four or five times prior to signing the Purchase Agreement. After moving in, she noticed a shadow on the wall in the great room, beginning in October of 2004, which she later realized was from a water leak. There was also leakage or water damage in the bedroom and the kitchenette area that occurred in December, 2004. In response to these issues, the great room was repainted, and skylights in the kitchenette area were sealed.

{¶26} She denied that she was involved in any conversations regarding a roof problem with McCann or Dietz.

{¶27} Michael Bencivenni explained that the main issues for which he and Kelly were seeking damages included repairs to the roof, damage from water in the basement, and interior water damage in the master bedroom and breakfast room. He explained that water came into the bedroom and breakfast room from the ceiling and the windows. He testified that the cause of the water intrusion was the windows, skylights, and the roof. He explained that water stains occurred in the basement, which

8

required waterproofing. The water stains were not ones he observed on the date of the inspection.

{¶28} He testified that he was with Womack throughout the inspection and was not prohibited from inspecting the property in any manner. He noted that water intrusion was found in the basement and issues were observed with the front bay window that may have caused water leaks.

{¶29} According to Michael Bencivenni, Dietz never informed him of any water intrusion issues, even upon being questioned by him after the inspection was performed. Bencivenni stated that, subsequent to the lawsuit, Womack indicated that he had been told by Dietz that there were water issues in the breakfast room, which was not stated to the Bencivennis by Womack before the sale.

{¶30} Richard Misconin, a service technician at Pella Window, testified that Pella serviced windows at the Pheasant Lane property for Dietz in the past. In 2001 and 2002, Pella replaced several windows and frames on the home, due to window frame rot. In 1998, Pella recommended having the brick around some windows reworked. He explained that the problems with the brick pushing against the window frame can cause water to run inside of the house or lead to leaks. On October 14, 2004, Pella provided services to the Bencivennis at the home and noted continuing problems with the brick work. They had to replace windows due to the sash rot in the computer room and in the kitchen.

{¶31} On July 20, 2010, the trial court issued an Order, granting defendants' Motions for Summary Judgment. The court held that Fraudulent Misrepresentation, Fraudulent Nondisclosure, and Fraudulent Concealment all require that the buyers are

9

justified in their reliance on the disclosures, or lack of disclosures, made by the seller. The court concluded that the Bencivennis could not establish justifiable reliance, since the inspector "had made [them] aware of potential water intrusion issues with the basement," as well as noted that there were water stains in the interior walls, water damage in the basement, water intrusion in the window sills, and signs of moisture and ice buildup in the attic. The court found that "the plaintiffs were aware not only of evidence of past water intrusion but of existing problems that could cause water intrusion." The court granted the Motion for Summary Judgment in part as to the counterclaim and denied it in part. The court dismissed the Bencivennis' Complaint.

{¶32} The Bencivennis appealed from this Order. The appeal was dismissed by this court for lack of a final appealable order on December 10, 2010, due to the fact that the counterclaim against the Bencivennis remained pending. *Bencivenni v. Dietz*, 11th Dist. Lake No. 2010-L-098, 2010-Ohio-6057, ¶ 8.

{¶33} A trial was held on Dietz's counterclaim on July 24, 2012. In its October 9, 2012 Judgment Entry, the trial court granted judgment in favor of the Bencivennis, holding that the court could not find that "no reasonable lawyer would have brought this action in light of existing law."

{¶34} On November 7, 2012, the Bencivennis filed their Notice of Appeal.

{¶35} On March 11, 2013, the Bencivennis filed an Agreed Motion to Dismiss the appeal as to Realty One, Inc., Realty One Real Living, and Connie McCann. On March 25, 2013, this court issued a Judgment Entry, granting the Motion, dismissing the appeal as to the foregoing appellees, and stating that the appeal was still pending against appellee Marilyn V. Dietz, Individually and Marilyn V. Dietz, Trustee of Trust

10

Dated May 5, 1997.

{¶36} The Bencivennis raise the following assignments of error on appeal:

{¶37} "[1.] The trial court decision to grant Dietz' Motion for Summary Judgment on the issues of fraudulent concealment and fraudulent nondisclosure constitutes reversible error.

{¶38} "[2.] The trial court's granting of agent(s) Motion for Summary Judgment on the issue of fraudulent misrepresentation without addressing plaintiffs/appellants['] allegation in their pleading of agent(s) fiduciary obligation constitutes reversible error."

{¶39} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶40} In their first assignment of error, the Bencivennis argue that their claims for Fraudulent Concealment, Fraudulent Nondisclosure, and Fraudulent Misrepresentation were not barred by the "as is clause," or the doctrine of caveat

11

emptor, and that Dietz was aware of existing problems in the home and failed to disclose them. They also assert that Dietz was under a legal duty, pursuant to R.C. 5302.30, to make a good faith disclosure regarding defects of which she had actual knowledge.

**{¶41}** Dietz argues that, regardless of the existence of the "as is" clause, the Bencivennis were not justified in their reliance on her statements, or lack of disclosure, since the Bencivennis' own inspector pointed out various defects related to the water leakage problem.

**{¶42}** "To prevail on a claim of fraudulent concealment, the injured party must establish: (1) actual concealment of a material fact; (2) with knowledge of the fact concealed; (3) and intent to mislead another into relying upon such conduct; (4) followed by actual reliance thereon by such other person having the right to so rely; (5) and with injury resulting to such person because of such reliance." (Citation omitted.) *Goddard v. Stabile*, 185 Ohio App.3d 485, 2009-Ohio-6375, 924 N.E.2d 868, ¶ 32 (11th Dist.).

**{¶43}** The elements which constitute the basis for a claim of Fraudulent Misrepresentation or Nondisclosure are: "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.'" *Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, ¶ 23, quoting *Cardi v. Gump*,

12

121 Ohio App.3d 16, 22, 698 N.E.2d 1018 (8th Dist.1997).

{¶44} Initially, we note that, as to the Fraudulent Nondisclosure claim, "'as is' language relieves a seller of any duty to disclose and bars a claim for fraudulent nondisclosure." *Massa v. Genco*, 11th Dist. Lake No. 89-L-14-162, 1991 Ohio App. LEXIS 867, 5 (Mar. 1, 1991); *Arndt v. P & M Ltd.*, 11th Dist. Portage Nos. 2007-P-0038 and 2007-P-0039, 2008-Ohio-2316, ¶ 81, citing *Brewer v. Brothers*, 82 Ohio App.3d 148, 151, 611 N.E.2d 492 (12th Dist.1992). An "as is" clause, however, does not preclude causes of action for Fraudulent Misrepresentation or Fraudulent Concealment. *Waleszewski v. Angstadt*, 11th Dist. Lake No. 2002-L-113, 2004-Ohio-335, ¶ 23; *Brewer* at 151 ("an 'as is' clause does not bar a claim for 'positive' fraud, a fraud of commission rather than omission"). Since there was an as-is clause in the Purchase Agreement, the Fraudulent Nondisclosure claim was properly dismissed.

{¶45} The Bencivennis generally argue that their claims should not have been dismissed under the doctrine of caveat emptor, since there was fraud committed by the seller. "The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Goddard*, 2009-Ohio-6375, at ¶ 25, citing *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988), syllabus.

{¶46} We need not proceed to evaluating whether the foregoing elements were met by the Bencivennis as to the remaining claims of Fraudulent Misrepresentation and Fraudulent Concealment. Instead, this court can determine whether summary judgment

13

should have been granted based on an evaluation of whether the Bencivennis failed to demonstrate the element of justifiable reliance. Upon conducting a de novo review, we reach the same conclusion as the trial court, that there was no genuine issue of material fact that the Bencivennis' reliance on the statements of Dietz was unjustified.

{¶47} As to Fraudulent Misrepresentation, this court has held that a "buyer cannot be said to have justifiably relied upon misrepresentations made by the seller where the agreement is clearly contingent upon the inspection rather than any alleged representations." *Kimball*, 2002-Ohio-7279, at ¶ 24, citing *Massa* at 7. This analysis has been applied when "the purchase agreement was clearly contingent upon completion of an inspection that was acceptable to appellants." *Id.* In this case, the Purchase Agreement included a contingency for the home inspection. If the inspection was not satisfactory, the Bencivennis were permitted to terminate the Purchase Agreement. They were able to inspect the home to determine if the condition was such that they wished to continue with the purchase. They chose to remove the conditions following the inspection, although they were not required to do so.

{¶48} In addition, the trial court's finding that there was no justifiable reliance based on the Bencivennis' knowledge of water leakage or seepage that was provided to them through the inspection was proper as to the Fraudulent Misrepresentation and Concealment claims.

{¶49} In determining whether reliance is justifiable, "'courts consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective

14

knowledge and means of knowledge.'" (Citation omitted.) *Finomore v. Epstein*, 18 Ohio App.3d 88, 90, 481 N.E.2d 1193 (8th Dist.1984).

{¶50} In their brief, the Bencivennis' argument as to the misrepresentations essentially amounts to a general assertion that there was an undisclosed pervasive water problem. They specifically argue that the Inspection Report did not inform them of such an issue, since there was only one mention of water in the report. As a review of the Inspection Report reveals, however, there were multiple references to water-related problems throughout the home. The Report referenced that the grading "needs maintenance" and that grading and drainage improvements were recommended, with the Report Remarks section explaining that grading problems could prohibit the maintenance of a dry basement. The Report noted that various windows needed caulking, since there were gaps, as described by Womack in his testimony, which could lead to water leakage in the home. The Report noted that the basement showed "some signs" of dampness/seepage and "water stains." The basement ceiling also had "signs of water damage/intrusion below front bay window" and "signs of past or present leaks." The leak that had damaged the kitchen ceiling was also noted in the report. All of these issues revealed water seepage throughout the home, even if the report did not include a specific statement of each room in which future water leakage or seepage may occur.

{¶51} As to the specific areas outlined by the Bencivennis, they were generally related to problems that were revealed to them through the report. First, regarding the basement, they should have been aware that leaks were a problem. As noted above, there were signs of water damage, seepage, and water stains. While the source of the water seepage may be questioned, they were aware that this was a problem that could

15

warrant additional inspection and future repairs. "[O]nce alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises." (Citation omitted.) *Melenick v. McManamon*, 8th Dist. Cuyahoga Nos. 92453 and 92675, 2010-Ohio-1051, ¶ 29.

{¶52} Similarly, regarding the windows, the Bencivennis were informed that at least some windows, including the skylights, needed caulking or sealing. Although they now argue that caulking alone would not solve the window leaks, they were able to investigate this issue at the time of the inspection and were aware of the danger that water leakage into the home could occur in the future.

{¶53} The Bencivennis also specifically argue that they had no knowledge of the fact that the roof had past ice damage and that it was the cause of the various leaks. Testimony was presented by Dietz that she informed Womack of prior roof repairs/replacement. Regarding this statement, Womack testified that he could not "recall if she told me [about the repair] or not." In Ohio, the "knowledge of an agent, received while she is acting within the scope of her authority and in reference to a matter over which her authority extends, is imputed to such agent's principal." *Cliff v. Loudenslager*, 12th Dist. Clermont No. CA2006-01-002, 2006-Ohio-5844, ¶ 19; *State ex rel. Nicodemus v. Indus. Comm.*, 5 Ohio St.3d 58, 59-60, 448 N.E.2d 1360 (1983). When knowledge of certain damage or defects is possessed by a buyer's agent, the seller "could reasonably rely on the fact that the agent's principals were aware of" such damage. *Cliff* at ¶ 19. Based on the uncontradicted testimony that Dietz told Womack of the previous roof repairs, such knowledge is imputed to the Bencivennis.

{¶54} Also, while the roof may have been the cause of some of the water

intrusion problems in the home, this does not change the fact that the Bencivennis were aware of the water problem and could have conducted further inspection as to its cause. The existence of water damage in multiple locations should have alerted them to the fact that there may be a roof problem. *See Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, 828 N.E.2d 1021, ¶ 63 (10th Dist.) (the failure to inform the buyer that a roof replacement was needed was not grounds for a fraud claim, in part because the home inspection report noted dampness in the basement and visible water stains, and the buyers "could not have justifiably relied on" the alleged nondisclosures and misrepresentations.).

**{¶55}** Further, the Inspection Report stated that the roof was estimated to be 14 years old and Womack marked that "due to age and/or condition: Budget for repair or replacement." The report explained that shingle roofs generally have a normal life of "15 to 20 years." Bencivenni also testified he knew that shingles generally last from 15 to 20 years. Although the report did not note water damage, it did make it clear that a repair of the roof would be a necessary expenditure in the near future.

**{¶56}** The Bencivennis also claim that the Thoroseal used on the basement walls was used to conceal water damage. However, they do not cite to evidence that this was the specific purpose of its use. Other dampness and water damage were already present and unconcealed in the basement. Further, Womack testified that Thoroseal can be used as a preventative measure. Based on these facts, we cannot find that there was evidence to show that the use of this product constituted fraudulent concealment.

**{¶57}** Regarding additional issues related to issues with the countertops and a

crack in the bathtub that were discussed in the depositions, the Bencivennis do not present an argument regarding these items in their brief. They do not point to specific evidence that Dietz had prior repairs to these items or that she was hiding such issues from them, especially given that they would be obvious during an inspection.

{¶58} Although we note that the Bencivennis may not have had specific information about the cause of each of the individual claims they now raise, the Bencivennis' assertion that they had no knowledge of a pervasive water intrusion problem is inconsistent with the above information provided to them through the inspection. They should have been aware of such a problem from all of the facts they learned through the inspection. They could have performed further investigation to determine whether to continue with the purchase of the home. As both Womack and Michael Bencivenni testified, they had full access to the property and were not prevented from moving furniture or other items to get complete access to areas where further investigation was needed, which was further evidenced by Michael Bencivenni's statement that, during the inspection, they lifted up the carpet in one room. Any contention that the television or other objects concealed damage caused near the bay window lacks merit, given that nothing prevented further investigation of this area. *See Goddard*, 185 Ohio App.3d 485, 2009-Ohio-6375, 924 N.E.2d 868, at ¶ 35 (a claim that certain damage was concealed or hidden due to furniture placement was preempted by the fact that the buyer did not attempt to move the furniture or ask to have the furniture moved).

{¶59} A conclusion that the reliance in this case was not justifiable is consistent with the holdings of other districts in similar circumstances. *See Cardi* 121 Ohio App.3d

at 22-23, 698 N.E.2d 1018 (a buyer could not show justifiable reliance on the seller's representations regarding a lack of water leakage since the inspectors made note of water intrusion issues); *Fleck v. Loss Realty Group*, 6th Dist. Wood No. WD-10-011, 2011-Ohio-152, ¶ 23-24 (Where the buyers were aware that there was water damage in the basement and knew that a nearby creek was prone to flooding, they "should have known that the information supplied by [sellers] was, at a minimum, incomplete and they should have conducted a more thorough investigation of the flooding issue. Therefore, appellants have not proved justifiable reliance" and summary judgment was proper.); *Rodgers v. Sipes*, 3rd Dist. Crawford No. 3-11-19, 2012-Ohio-3070, ¶ 32-35.

{¶60} In addition, in *Yuricek v. Dye*, 11th Dist. Trumbull No. 99-T-0093, 2000 Ohio App. LEXIS 5931 (Dec. 15, 2000), this court discussed a previous decision, *Durica v. Donaldson*, 11th Dist. Trumbull No. 97-T-0183, 2000 Ohio App. LEXIS 789 (Mar. 3, 2000), as it related to reliance. In *Durica,* the purchase agreement was contingent upon a satisfactory home inspection, the inspection report indicated a water problem, and the buyer continued with the transaction and "filed suit when the water problem turned out to be more severe than they apparently anticipated." *Yuricek* at 15. The *Yuricek* decision noted that "[w]hile this court's decision in *Durica* was based more on the application of the doctrine of *caveat emptor,* that doctrine addresses essentially the same issue that the question of justifiable reliance raises." *Id.* Although the buyer in *Durica* did not receive a disclosure from the seller about the full extent of the water issues, such issues could have, and should have, been observed from the inspection and a water problem was indicated in the report, thus prohibiting the buyer from arguing that the justifiable reliance element was satisfied. *Id.* at 15-16.

19

{¶61} Based on the foregoing, we cannot find that there was justifiable reliance on Dietz's statements. Although the Bencivennis did not have much prior experience with purchasing real estate, they appear to be of such intelligence, age, and condition that they could understand the results of the inspection and could have conducted further investigation to determine whether a purchase of the home was prudent. There is no indication that they should have relied on Dietz's representations alone, especially in light of the information they learned from their own inspector. Summary judgment was proper as to the claims against Dietz.

{¶62} The first assignment of error is without merit.

{¶63} In their second assignment of error, the Bencivennis argue that the trial court erred in granting the Realty One defendants' Motion for Summary Judgment.

{¶64} Since this assignment of error is related to the granting of summary judgment as to McCann, Realty One, and Realty One Real Living, not as to Dietz, it is moot. As noted above, the appellants moved for voluntary dismissal of the appeal as to these parties, which was granted by this court.

{¶65} The second assignment of error is without merit.

{¶66} Based on the foregoing, the judgment of the Lake County Court of Common Pleas, granting Realty One, Inc., Realty One Real Living, and Connie McCann's, and Marilyn V. Dietz's, Motions for Summary Judgment, is affirmed. Costs to be taxed against appellants.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.

20

_____

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

{¶67} I concur with the majority's conclusion that the Bencivennis' claim for Fraudulent Nondisclosure is barred by the "as is" language in the subject contracts. I respectfully disagree that their claims for Fraudulent Concealment and Fraudulent Misrepresentation are barred. The majority concludes that the Bencivennis cannot demonstrate the necessary element of justifiable reliance. This matter was decided by the trial court on summary judgment. The Bencivennis were not required to prove their case at that juncture, but merely to raise a genuine issue of material fact. I believe they pointed to sufficient evidence of justifiable reliance to withstand the grant of summary judgment herein.

{¶68} R.C. 5302.30 requires that sellers of most residential real property fill out and deliver to purchasers a property disclosure form. As the majority admits, there are material discrepancies between such a form filled out by Ms. Dietz regarding the subject property relating to an attempted sale in 2003, and the form she delivered in 2004 to the Bencivennis. The Bencivennis never received a copy of the 2003 disclosure form, which detailed additional problems with the house. Further, in the 2004 form, Ms. Dietz stated she knew of no leaks in the house, which appears to be contradicted by the evidence in the record. I believe that purchasers of residential real estate should, as a

21

rule, be able to rely on the R.C. 5302.30 form to disclose defects known to the seller. That is the form's purpose. Specifically, R.C. 5302.30(D)(1) provides, in pertinent part:

{¶69} "The form * * * shall be designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred, including, but not limited to, * * * the condition of the structure of the property, including the roof, foundation, walls, and floors; * * * and any material defects in the property *that are within the actual knowledge of the transferor.*" (Emphasis added.)

{¶70} Here, defects and conditions actually known to Ms. Dietz were not disclosed on the forms. I do not believe the evidence cited by the majority to show that the Bencivennis either did not, or could not, justifiably rely on representations and/or disclosures made – or not made – to them by Ms. Dietz is sufficient to override the effect of the disclosure forms.

{¶71} I would reverse and remand on the issues of Fraudulent Concealment and Fraudulent Misrepresentation. Consequently, I must respectfully dissent.