[Cite as *Li-Conrad v. Curran*, 2016-Ohio-1496.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JANE ELIZABETH LI-CONRAD, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-L-085** |
| CHRISTOPHER P. CURRAN, et al., | : | |
| Defendant-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 14 CV 001227.

Judgment: Affirmed.

*Russell D. Kornblut*, The Law Offices of Russell D. Kornblut, 30455 Solon Road, Solon, OH 44129 (For Plaintiff-Appellant).

*Joshua T. Morrow*, and *James V. Aveni*, Ranallo & Aveni, LLC 6685 Beta Drive, Cleveland, OH 44143 (For Defendant-Appellees, Christopher Curran and Judith L. Curran).

*Tracey S. McGurk*, Mansour Gavin, LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1400, Cleveland, OH 44114 (For Defendant-Appellees, Scott Newman, Jude Crockett, and Howard Hanna Real Estate Services Mentor Office).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Jane Elizabeth Li-Conrad, appeals the trial court's judgment in favor of appellees on all pending claims in her civil complaint. Appellant argues that summary judgment was improper because her evidentiary materials create a factual dispute concerning whether the appellees engaged in fraud during the course of a real

estate transaction. For the following reasons, we affirm.

{¶2} This case involves the sale of a residential home. Appellees, Christopher and Judith Curran, sold a residential house located on North Palmerston Drive in Mentor, Ohio. The Currans bought the home in April 1998, and resided there continuously until the sale. When the Currans took possession, the basement was finished. Most of the walls were covered with drywall. The walls not covered, are in the southwest corner of the basement in a small room housing a sump pump.

{¶3} In July 2006, the Currans' basement flooded due to a torrential rain storm. According to them, the basement had an inch of standing water. The Currans replaced the carpet over the majority of the basement floor and removed some of the wall paneling in an area underneath a stairway closet. Additionally, they replaced nearly 500 square feet of drywall.

{¶4} A few months before placing the home on the market in 2012, the Currans hired a company to make repairs to the sump pump room. The work primarily consisted of patching cracks in a foundation wall, applying an epoxy floor, and caulking certain areas.

{¶5} The Currans listed the house with Howard Hanna Real Estate Services, and were represented by two Howard Hanna agents, Judie A. Crockett and Scott Newman. Newman is the Currans' nephew.

{¶6} The Currans completed a Residential Property Disclosure Form. Under the "water intrusion" section, the Currans noted the 2006 flood and some of the repairs that were performed as a result of the standing water. Under the "structural components" section, they stated that they were unaware of any material problems with

2

the foundation, basement, or crawl spaces.

{¶7} On February 14, 2013, appellant executed a written offer to purchase the home for $260,000. The first term of the written offer states that appellant agrees to accept the home "AS IS" except for normal wear and tear.

{¶8} The offer also contains an "inspection" term, under which appellant was given an opportunity to have the premises inspected by a professional. This term further provides that if the inspection reveals any material condition that appellant finds unsatisfactory, she has three days to give notice to the Currans. The term then states:

{¶9} "If SELLER agrees within ____ days after notification to correct said condition(s), then this AGREEMENT shall remain in full force and effect. If SELLER does not so elect, then BUYER, at BUYER'S option, may either waive such condition(s) and accept the PROPERTY in "AS IS" condition or terminate this AGREEMENT * * *."

{¶10} After the Currans accepted appellant's offer, she hired James Nemastil to inspect the home. In his ensuing written report, Nemastil noted two areas of concern in the basement. The first was inside the sump pump room, near the southwest corner of the home. Specifically, he stated that the foundation wall inside that room was bowing inward; accordingly, he recommended that a foundation repair specialist be contacted. The second area of concern was in the southeast corner of the basement, where there were cracks in the mortar that should be repaired by a mason. The report further indicated that the grade of the land near the southeast corner was poor, and that this could lead to water seepage and possible foundation failures. Last, Nemastil generally noted that foundation wall cracks could get larger over time and require major structural repairs.

{¶11} Upon receiving the inspection report, appellant hired William Bridge and Kirtland Contracting to inspect the basement and make recommendations regarding possible repairs. In relation to the sump pump room, Bridge concluded that immediate repairs to the bowing foundation wall were required, and that it would cost approximately $16,000 to complete the necessary work. As to the issue in the southeast corner, he did not make any recommendation because, since the walls were covered with drywall, he could not discern any major problem.

{¶12} In light of Bridge's recommendation, appellant made a second offer to the Currans. Specifically, she stated in an e-mail that she was willing to go forward with the purchase if the Currans would pay for half of the repairs in the sump pump room. This offer made no reference to the cracks in the southeast corner, noted in the Nemastil report. The Currans accepted this offer, and the purchase agreement was amended to state a $252,000 purchase price.

{¶13} In conjunction with the second offer, appellant instructed her real estate agent to contact the Currans' agents at Howard Hanna and inquire whether there were any other problems with the foundation and basement which the Currans failed to mention. After discussing with the Currans, Scott Newman informed appellant's agent that all necessary disclosure regarding the foundation and basement had been made.

{¶14} The sale closed on March 26, 2015. At some point in April 2015, Kirtland Contracting repaired the bowing foundation wall. When the project was completed, a City of Mentor inspector came to the home and assessed the work. Although the inspector approved the repairs to the bowing wall in the sump pump room, his inspection revealed other possible problems with the foundation wall near the front

4

porch. As a result, the inspector recommended that a "destructive" investigation be done to determine if there were any latent defects in the foundation or basement.

{¶15} At appellant's request, the investigation was conducted by Bridge and Kirkland Contracting, and consisted of removing dirt around the exterior walls and drilling holes in the drywall inside the basement. This work revealed a thirty-foot horizontal crack in the southeast foundation wall and significant dampness on the north foundation wall. Kirtland Contracting estimated the cost for repairing these new problems would be approximately $24,000.

{¶16} In June 2014, appellant brought the underlying case against the Currans, Howard Hanna, Scott Newman, and Judie Crockett. Her complaint set forth six counts, including claims for fraud, negligent misrepresentation, and violations of the Ohio Consumer Sales Practices Act. Appellant sought compensatory and punitive damages in an amount not less than $25,000.

{¶17} After engaging in considerable discovery, the three Howard Hanna defendants moved for summary judgment on all claims. The Currans submitted a separate motion for summary judgment. The Currans' motion relied heavily on the affidavit of James Nemastil, who conducted the original inspection for appellant. In responding to both motions, appellant relied on William Bridge's affidavit, who averred that the amount of standing water in the Currans' basement during the 2006 flood had to be greater than one inch.

{¶18} In its final order, the trial court granted both summary judgment motions and entered judgment against appellant on all claims in her complaint. In appealing this decision, appellant asserts five assignments of error for review:

{¶19} "[1.] The trial court committed prejudicial error in granting defendants-appellees, Howard Hanna Real Estate Services, Judie Crockett, and Scott Newman *et al.*'s motion for summary judgment based upon its opinion that negligent misrepresentation claims, because not all professionals are in the business of supplying information to others and it is not clear to the court that such a claim is applicable to a realtor, finding that because defendant-appellee realtor was not the plaintiff's realtor and that defendant-appellee seller is not in the business of supplying information, plaintiff did not seek guidance from them regarding her business transaction.

{¶20} "[2.] The trial court committed prejudicial erred in granting defendants-appellees, Christopher P. Curran and Judith L. Curran *et al.*'s motion for summary judgment based upon its opinion that for fraudulent nondisclosure claims, an 'as is' clause 'relieves a seller of any duty to disclose and bars a claim for fraudulent nondisclosure.'

{¶21} "[3.] The trial court committed prejudicial error in granting all defendants-appellees, Christopher P. Curran, *et al.*'s motion for summary judgment based upon its opinion that for fraudulent misrepresentation claims, the plaintiff cannot establish justifiable reliance where the sale is contingent upon an inspection of the premises, finding that because the sale was contingent upon an inspection, and because an inspection was conducted, plaintiff cannot establish justifiable reliance.

{¶22} "[4.] The trial court committed prejudicial error in granting defendants-appellees, Christopher P. Curran, *et al.*'s motion for summary judgment based upon its opinion that for fraudulent concealments claims, because the inspection report specifically advised and recommended that plaintiff contact a foundation repair

6

specialist, finding that plaintiff was aware of potential problems so did not actually rely on any alleged misrepresentations, failures to disclose, or concealment by the sellers.

{¶23} "[5.] The trial court committed prejudicial error in granting defendants-appellees, Howard Hanna Real Estate Services, Judie Crockett, and Scott Newman *et al.*'s motion for summary judgment based upon its opinion that plaintiff-appellant does not address her claims for violations of the Ohio Consumer Sales Practices Act, finding that because the OCSSPA does not apply to real estate transactions, realtor defendants-appellees are entitled to judgment as a matter of law."

{¶24} Appellant's first assignment of error pertains to the merits of her negligent misrepresentation claim. As noted, after appellant received the Nemastil report and learned of the problem with the bowing wall in the sump pump room, she asked her real estate agent to contact the Howard Hanna defendants and ascertain whether the Currans had provided full disclosure concerning all problems with the basement. She now contends that, given the subsequent discovery of the thirty-foot horizontal crack in the southeast wall, it is clear that the Currans and the Howard Hanna appellees lied in stating that they were unaware of any other problems. In light of this, appellant argues that her evidentiary materials created a factual dispute concerning negligent misrepresentation.

{¶25} Negligent misrepresentation is defined as: "'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by *their justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in

obtaining or communicating the information.'" (Citations omitted.) (Emphasis six.) *Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

**{¶26}** Given the elements of negligent misrepresentation, this court has concluded that such a claim is considered a business tort that is not meant to have extensive application. *The Middlefield Banking Co. v. Deeb*, 11th Dist. Geauga No. 2011-G-3007, 2012-Ohio-3191, ¶31-33. We have also stated that, "under Ohio law, the tort of negligent misrepresentation has no application to consumer transactions or typical business transactions." *Id.* at ¶35. Therefore, the tort does not apply to a loan transaction between a bank and its customer because, in that type of situation, there is no "fiduciary-like" relationship in which the bank would have a professional duty to give dependable information. *Id.* at ¶36.

**{¶27}** A similar analysis applies to this case. That is, since the three Howard Hanna appellees were not representing appellant, they do not owe a fiduciary-like duty to her. There also is no fiduciary-like relationship between the Currans and appellant because they are opposing parties in a real estate transaction. Although the Currans were required to provide accurate information in completing the disclosure form as to the condition of the home, this requirement did not arise from a fiduciary relationship. Thus, in light of the undisputed facts as to the relationship between the parties, appellant cannot maintain a negligent representation claim against any of the five appellees because they were not hired by her to provide information. Accordingly the first assignment is not well-taken.

**{¶28}** Although appellant's complaint stated one general claim for fraud, that claim was broken down into three separate causes of action for summary judgment

purposes: fraudulent nondisclosure, fraudulent misrepresentation, and fraudulent concealment. Appellant's second assignment addresses the trial court's decision on her fraudulent nondisclosure claim. She contends that the trial court erred in holding that the presence of the "as is" clause in the purchase agreement barred her from maintaining this claim against the Currans.

{¶29} As a general proposition, the presence of an "as is" clause in a real estate purchase agreement has no effect upon the viability of claims for fraudulent misrepresentation or fraudulent concealment. *Bencivenni v. Dietz*, 11th Dist. Lake No. 2012-L-127, 2013-Ohio-4549, ¶44. However, such a clause bars a claim for fraudulent nondisclosure because it relieves the seller of any duty to disclose. *Id.* Stated otherwise, the clause only provides protection for acts of omission, as compared to a positive act of fraud. *Id.*

{¶30} There is no dispute that the purchase agreement contains a clause that she was accepting the home "as is." Despite this, she asserts that she should be allowed to predicate her fraudulent nondisclosure claim upon the Currans' "affirmative false representation" that, except for the bowing wall in the sump pump room, there were no other defects in the foundation or basement. Yet, appellant's argument is clearly based upon the misconception that an "affirmative false representation" can form the grounds of a fraudulent nondisclosure claim. As appellant has failed to establish that the trial court erred in relying upon the *Bencivenni* precedent as the basis for its ruling on the fraudulent nondisclosure claim, her second assignment is without merit.

{¶31} Under her next assignment, appellant submits that the trial court erred in concluding that she could not prevail on her fraudulent misrepresentation due to the

9

lack of "justifiable reliance." Citing *Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, the trial court found that the provisions in the purchase agreement's "inspection" term precluded her from relying upon any statement made by the Currans concerning the condition of the basement. Appellant argues that the trial court misinterpreted *Kimball*, and that she could still prove justifiable reliance by showing that she actually based her decision to proceed with the sale upon the Currans' statements.

{¶32} As noted above, the "inspection" term of the purchase agreement states that if the inspection revealed new problems with the home and the seller chose not to remedy those problems, the buyer accepts the home "as is," thereby waiving the right to have the problem corrected. Despite the fact that the Nemastil report had a reference to possible crack problems in the southeast foundation wall, appellant did not negotiate a resolution of this issue with the Currans. As a result, she accepted the home "as is" once the "bowing wall" issue was resolved.

{¶33} To prevail on her fraudulent misrepresentation claim, appellant must prove that she justifiably relied upon the seller's false statement. *Bencivenni*, at ¶43. But, "'[a] buyer cannot be said to have justifiably relied upon misrepresentations made by the seller where the agreement is clearly contingent upon the inspection rather than any alleged representations.'" *Kimball*. at ¶23, quoting *Massa v. Genco*, 11th Dist. Lake No. 89-L-14-162, 1991 Ohio App. LEXIS 867, *7 (Mar. 1, 1991). Noting the use of the words "rather than" in the foregoing quote, appellant asserts that *Bencivenni* and *Massa* must be interpreted to allow the buyer to rebut the effect of the "inspection" provision by showing actual reliance on a misrepresentation. However, such an interpretation would have the effect of rendering the "inspection" provision meaningless.

10

{¶34} In this case, the Nemastil report gave appellant notice of potential crack problems in the southeast foundation wall. Despite this, she did not take any steps to investigate the issue or enter into further negotiations with the Currans. Thus, under the express wording of the "inspection" term, she agreed to accept the residence in its present condition. This precludes her from asserting that she justifiably relied upon any false statements made by the Currans. Since appellant cannot establish all elements of a fraudulent misrepresentation claim, the trial court properly granted summary judgment, and the third assignment of error lacks merit.

{¶35} Under her fourth assignment, appellants asserts that summary judgment was not warranted on her fraudulent concealment claim because her evidentiary items create a factual dispute as to the concealment of the thirty-foot crack and the significant dampness on the southeast foundation wall. Citing the affidavit of William Bridge, she argues that his averments were sufficient to raise an inference that the Currans were aware of these problems and tried to hide them from plain view.

{¶36} To prevail on a fraudulent concealment claim, the plaintiff must establish "1) there was an actual concealment, 2) of a material fact, 3) with knowledge of the concealment, 4) with the intent to mislead another into relying, 5) which causes justifiable reliance by a party with a right to rely, and 6) the relying party suffers damages as a result." *Buchanan v. Improved Properties, LLC*, 3rd Dist. Allen No 1-13-38, 2014-Ohio-263, ¶15. In stating in their summary judgment motion that there were no set of facts appellant could establish under which she could satisfy the first and third elements, the Currans attached a joint affidavit in which they averred that the basement was "fully finished" for the entire period they owned the home. Based upon this, they

11

maintained that they could not have been aware of the crack and the dampness because it was hidden behind the existing drywall.

{¶37} In his opposing affidavit, William Bridge made several averments with the intent of showing that the Currans had lied as to the amount of standing water that was in their basement during the 2006 flood. For example, Bridge noted that the paneling in one area of the basement had been cut out approximately eighteen inches above the basement floor. He also noted that the invoices covering the repairs made following the 2006 flood showed that nearly 500 square feet of drywall was replaced.

{¶38} Taken as a whole, Bridge's averments were sufficient to raise an inference that the Currans may have been deceitful in describing the extent of the damage caused by the flood. However, the averments were not sufficient to support a further inference that, in light of the greater damage, they were aware of the specific problems found on the southeast wall. As to the replacement of the drywall, Bridge made no assertions as to where the old drywall was replaced. Furthermore, even if the drywall on the southeast wall was removed in 2006, there is no evidence indicating that the problems existed at that time and could have been observed.

{¶39} Bridge also averred that the Currans' deceitful tendencies could be seen in the 2012 cosmetic repairs they made to the bowing foundation wall in the sump pump room. In support, he noted that an epoxy floor was applied, and the loose debris and cracks on the wall had been merely caulked. However, the undisputed facts show that the sump pump room was on the southwest wall, totally separate from the problems on the southeast wall. Moreover, the repairs made to the bowing wall were visible to inspection.

12

{¶40} Even when considered in a manner that is most favorable to appellant, her evidentiary materials were insufficient to raise an inference that the Currans were aware of the exact problems found during the "destructive" investigation of the basement. As appellant could not create a factual dispute as to the extent of the Currans knowledge, she would not be able to satisfy all necessary elements for a fraudulent concealment claim. Accordingly, because summary judgment was warranted under Civ.R. 56(C), her fourth assignment is without merit.

{¶41} Appellant's final assignment pertains to her claim for violations of the Ohio Consumer Sales Practices Act. While acknowledging that that the OCSPA does not apply to a pure real estate transaction, she maintains that she was entitled to go forward under the OCSPA because the transaction for the Currans' home also had a "goods or services" aspect. In support of this point, she notes that Howard Hanna offered a 100 percent money back guarantee if a purchaser was not satisfied with the property.

{¶42} During his deposition, Scott Newman testified that appellant could not qualify for the guarantee because Howard Hanna was not acting as her representative. He further noted that the Currans did not qualify for the guarantee because the company's commission on the deal would not be high enough. Since appellant never refuted Newman's testimony concerning her lack of qualification, she was unable to establish the factual predicate for her entire OCSPA claim; i.e., she did not show that the purchase of the home was a hybrid transaction. Therefore, since the OCSPA cannot be applied to a pure real estate transaction, *Hurst v. Enterprise Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, ¶34 (11th Dist.), summary judgment was justified. Appellant's fifth assignment is not well-taken.

{¶43} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.,

concur.